## PEOPLE v CARINES

Docket No. 110218. Argued April 7, 1999 (Calendar No. 3). Decided July 27, 1999. Rehearing denied 461 Mich 1205.

Mario E. Carines was convicted by a jury in the Kent Circuit Court, Donald A. Johnston, J., of armed robbery and first-degree felony murder. The Court of Appeals, GRIFFIN, P.J., and DOCTOROFF and MARKMAN, JJ., affirmed in an unpublished opinion per curiam, concluding that the evidence offered by the prosecution was sufficient to prove armed robbery and felony murder, and that the aiding and abetting instructions for felony murder did not affect the jury's verdict (Docket No. 182792). The defendant appeals.

In an opinion by Justice CORRIGAN, joined by Chief Justice WEAVER, and Justices BRICKLEY, TAYLOR, and YOUNG, the Supreme Court *held*:

The prosecution presented sufficient evidence to prove armed robbery and felony murder beyond a reasonable doubt. The plain error rule of *People v Grant*, 445 Mich 535 (1994), is extended to claims of unpreserved, constitutional error.

1. When determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. In this case, the prosecution presented sufficient evidence to establish that the defendant committed armed robbery, either as a principal or as an aider and abettor. Further, the jury could have inferred that the defendant assisted in a felonious taking of property in light of his close association with his codefendant. The prosecution also adduced sufficient evidence to support defendant's felony murder conviction either as a principal or an aider and abettor. The facts established that defendant was not merely present, but was an active participant in the armed robbery in which the victim was killed.

2. MCL 769.26; MSA 28.1096 provides that judgments or verdicts are not to be reversed absent a miscarriage of justice. In addition, Michigan has long recognized the importance of preserving issues for appellate review. A state may develop procedural rules that lead to issue forfeiture, even where procedural rules implicate constitu-

tional protections, if the rules serve a legitimate state interest. Reversal is warranted only when plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence.

3. The plain error rule extends to unpreserved claims of constitutional error, including claims of instructional error. The policy underlying issue forfeiture provides no basis for distinguishing constitutional from nonconstitutional error. In both instances, requiring a contemporaneous objection provides the trial court an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.

4. On the specific facts presented in this case, the trial court erred by failing to instruct the jury on the second element of aiding and abetting. The Supreme Court has never held that a defendant must participate in an actual killing to be guilty of felony murder. To the contrary, case law establishes that, in certain circumstances, a defendant may be held responsible for the actions of a co-felon. However, viewed as a whole, the trial court's instructions did not prejudice the defendant because they adequately protected his rights. Further, the alleged error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Affirmed.

Justice KELLY, joined by Justice CAVANAGH, concurring in part and dissenting in part, stated that, while the majority properly concluded that the prosecution presented sufficient evidence to convict the defendant of armed robbery and felony murder either as a principal or as an aider and abettor, it erred in concluding that the trial court's improper instruction of the jury on aiding and abetting felony murder does not warrant reversal.

Failure to object to jury instructions constitutes waiver of any error, unless relief is necessary to avoid manifest injustice. Manifest injustice results when an erroneous or omitted instruction pertains to a controlling or basic issue of the case. Consequently, when an erroneous jury instruction pertains to an essential element of a crime, a contemporaneous objection is unnecessary to preserve the issue for appeal. Appellate courts will consider claims of constitutional error for the first time on appeal when the alleged error could have been decisive of the outcome.

Because this case involves a constitutional error, an erroneous instruction concerning an essential element of the offense, a contemporaneous objection to an erroneous jury instruction was not required to preserve the issue for appeal. Further, because erroneous jury instructions regarding essential elements are reviewed for harmless error by utilizing a prejudice standard, the Supreme Court must assess whether a properly instructed jury might have reached

a different result, had the error not occurred. By instructing the jury that the prosecution was required to prove only that one of the robbers killed the victim, the trial court blended its felony-murder instruction with an element of aiding and abetting. It also failed to instruct the jury that defendant must have performed acts or given encouragement that assisted in the killing, and expressly instructed that defendant need not have participated in the killing. Consequently, the defendant was prejudiced by the failure to instruct on an essential element of the crime. Although there was sufficient evidence to convict defendant of felony murder, a properly instructed jury might have found otherwise.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Vicki L. Seidl,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for the defendant.

Amicus Curiae:

*Elwood Brown,* President, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

CORRIGAN, J. We granted leave to determine 1) whether the prosecution presented sufficient evidence to support defendant's convictions of armed robbery, MCL 750.529; MSA 28.797, and first-degree felony murder, MCL 750.316(1)(b); MSA 28.548(1)(b), and 2) whether the trial court committed error requiring reversal when it instructed the jury regarding the elements of aiding and abetting felony murder.

First, we hold that the prosecution presented sufficient evidence to prove armed robbery and felony murder beyond a reasonable doubt. Next, we extend the plain error rule of *People v Grant,* 445 Mich 535; 520 NW2d 123 (1994), to claims of unpreserved, con-

stitutional error. Although the court's failure to properly instruct on aiding and abetting felony murder was plain error, defendant has not established prejudice. Moreover, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we affirm the unpublished opinion of the Court of Appeals, which affirmed defendant's convictions and sentence.[1]

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Defendant was tried before a Kent County jury for the robbery and murder of Thomas Eugene Gober in a downtown Grand Rapids parking garage. While taking trash to a dumpster outside a restaurant, prosecution witness James Warren heard a commotion coming from the parking structure across the street. He saw two people on the second story involved in a struggle. One man, subsequently identified as codefendant Victor Escobar, wore a brown or green sweater.[2] He was holding a third person whom Warren could not see. When Warren yelled, the men ran.

Warren then observed three people run from the parking structure, among them Escobar and defendant. Defendant wore a black jacket with red markings. The hood was pulled over his head.[3] Latisha Washington, an employee of the parking garage, likewise saw the three men run from the structure. She confirmed that one man had been wearing a black hooded jacket with red markings.

---

[1] Unpublished opinion per curiam, issued April 25, 1997 (Docket No. 182792).

[2] Escobar was separately tried and convicted of felony murder and armed robbery.

[3] Warren's view of the events in the parking structure was partially obstructed. He testified that defendant was not one of the men he observed on the second floor. A third suspect in the robbery-murder was never apprehended.

Warren then went to the second floor of the parking structure where he found Gober lying on the floor with his throat cut. Blood had pooled around Gober's head. An autopsy revealed that Gober died from a single stab wound to the neck that severed his carotid artery.

Warren immediately called 911. Officer Mike Woronko responded. Within minutes after the crime was discovered, Woronko, armed with a description of the suspects, stopped defendant and Escobar less than half a mile from the crime scene. Defendant was wearing his jacket inside out with the hood tucked inside the collar. Warren and Washington later identified defendant by his distinctive jacket.

The right arm and cuff area and the left and right pocket of defendant's jacket were bloodstained. The blood did not match defendant's or Escobar's blood type, but was consistent with Gober's blood type. The record established that less than one percent of the population shares the characteristics of Gober's blood. The police also found blood on Escobar's clothes, but that blood matched Escobar's blood type, not that of defendant or Gober. The police found a small amount of blood on Escobar's hands. The sample was too small to be identified. The police did recover a watch inscribed with Gober's name from Escobar.

Defendant testified in his own defense, but refused to answer any questions. Instead, he made a nonresponsive, unsupported assertion that the police had planted the blood on his jacket. Accordingly, the trial court instructed the jury to disregard defendant's testimony.

Following the presentation of proofs and closing arguments, the trial court instructed the jury on felony murder without objection:

> The first thing which the prosecution must prove is that the victim, Mr. Gober, was killed during an armed robbery by one of the robbers. *The prosecution does not have to prove that Mr. Carines, himself, killed him or participated in the killing.* To prove this element the prosecution need prove only that one of the robbers killed Mr. Gober. [Emphasis added.]

The court further instructed the jury that defendant must have participated in the robbery during which Gober was killed, and that defendant must have possessed the requisite mental state, i.e., malice. The court further stated:

> Just because a defendant participated in a robbery during which someone was killed does not itself prove [felony murder]. However, in many circumstances committed [sic] a robbery, particularly one involving violence and/or the use of a weapon, can indicate an intention to kill, an intention to cause great bodily harm, or the knowing creation of a very high risk of death or great bodily harm, knowing that death or such harm was the likely result of his actions. You may infer that a defendant had the necessary intent from evidence that the defendant set in motion, a force, likely to cause death or great bodily harm. . . . If none of the participants intended for anyone to get killed or hurt and there was no good reason to anticipate given how things were planned and/or how they were carried out, that anyone would get killed or hurt, then any death which occurred during the course of the robbery is not a Felony Murder. If given the circumstances of planning and committing the robbery there was no good reason for participants other than the killer to anticipate a killing or a serious injury, those other participants are not guilty of a Felony Murder.

The jury found defendant guilty of armed robbery and felony murder. The trial court imposed the mandatory sentence of life without the possibility of parole.[4]

---

[4] The court declined to sentence defendant on the armed robbery conviction because it apparently believed that the felony murder conviction

The Court of Appeals affirmed defendant's convictions and sentence in an unpublished opinion. The Court concluded that the evidence was sufficient to prove armed robbery and felony murder. Further, because defendant failed to preserve his claim that the trial court had not properly instructed the jury on the elements of felony murder, the Court reviewed the instructional issue for a miscarriage of justice. The Court noted that the trial court appeared to have "blended an aiding and abetting element into the felony murder instructions without giving a separate instruction on aiding and abetting felony murder," and failed to instruct the jury on the second element of aiding and abetting, i.e., that defendant must have performed acts or given aid or encouragement that assisted in the crime. The Court concluded, however, that "the jury apparently found defendant guilty as the principal in the felony murder" because "the evidence at trial supported the theory that defendant was the individual who stabbed the victim." Thus, the Court of Appeals determined, "the aiding and abetting instructions for felony murder did not affect the jury's verdict."

We granted defendant's application for leave to appeal to consider the question of sufficiency of the evidence and the claim of instructional error. 459 Mich 894 (1998).

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Defendant initially contends that the evidence was insufficient to support his armed robbery and felony murder convictions. *People v Wolfe*, 440 Mich 508,

---

subsumed the armed robbery conviction for double jeopardy purposes. We do not address the propriety of this decision since it has not been raised on appeal.

515; 489 NW2d 748 (1992), articulates the standard
for reviewing sufficiency claims:

> [W]hen determining whether sufficient evidence has been
> presented to sustain a conviction, a court must view the
> evidence in a light most favorable to the prosecution and
> determine whether any rational trier of fact could have
> found that the essential elements of the crime were proven
> beyond a reasonable doubt.

"Circumstantial evidence and reasonable inferences
arising from that evidence can constitute satisfactory
proof of the elements of a crime." *People v Allen*, 201
Mich App 98, 100; 505 NW2d 869 (1993).

### B. ARMED ROBBERY

The prosecution presented sufficient evidence to
prove defendant's armed robbery conviction beyond a
reasonable doubt. "The elements of armed robbery
are: (1) an assault, (2) a felonious taking of property
from the victim's presence or person, (3) while the
defendant is armed with a weapon described in the
statute." *People v Turner*, 213 Mich App 558, 569; 540
NW2d 728 (1995). The prosecution here relied, in
part, on an aiding and abetting theory.

> "Aiding and abetting" describes all forms of assistance
> rendered to the perpetrator of a crime and comprehends all
> words or deeds that might support, encourage, or incite the
> commission of a crime. . . . To support a finding that a
> defendant aided and abetted a crime, the prosecutor must
> show that (1) the crime charged was committed by the
> defendant or some other person, (2) the defendant per-
> formed acts or gave encouragement that assisted the com-
> mission of the crime, and (3) the defendant intended the
> commission of the crime or had knowledge that the princi-
> pal intended its commission at the time he gave aid and
> encouragement. An aider and abettor's state of mind may
> be inferred from all the facts and circumstances. Factors
> that may be considered include a close association between

the defendant and the principal, the defendant's participa-
tion in the planning or execution of the crime, and evidence
of flight after the crime. [*Turner, supra,* 213 Mich App 568-
569 (citations omitted).]

In this case, the prosecution presented sufficient
evidence to establish that defendant committed
armed robbery, either as a principal or as an aider
and abettor. The presence of the victim's blood on
defendant's sleeve and in his pockets suggested that
defendant himself assaulted the victim. The jury
could have inferred further that defendant assisted in
a felonious taking of property in light of his close
association with Escobar. Defendant fled the crime
scene with Escobar, who had the fruits of the rob-
bery, the victim's inscribed watch, on his person.
Finally, the jury could have concluded that defendant
had been armed with a dangerous weapon. The
autopsy established that the victim died from a stab
wound to the neck. Given the presence of the victim's
blood on defendant's clothes, and the absence of the
victim's blood on Escobar's clothes, the jury rationally
could have inferred that defendant had used a knife
during the robbery. Accordingly, the prosecution
presented sufficient evidence to prove armed robbery
beyond a reasonable doubt.

### C. FELONY MURDER

The prosecution also adduced sufficient evidence
to support defendant's felony murder conviction as
either a principal or an aider and abettor.

The elements of felony murder are: (1) the killing of a
human being, (2) with the intent to kill, to do great bodily
harm, or to create a very high risk of death or great bodily
harm with knowledge that death or great bodily harm was
the probable result [i.e., malice], (3) while committing,
attempting to commit, or assisting in the commission of any

of the felonies specifically enumerated in [the statute, including armed robbery]. [*Turner, supra,* 213 Mich App 566.]

The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *Id.* Malice may also be inferred from the use of a deadly weapon. *Id.,* p 567.

> "In situations involving the vicarious liability of cofelons, the individual liability of each felon must be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for an unforeseen death that did not result from actions agreed upon by the participants. In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, liability may be established on agency principles. If the homicide is not within the scope of the main purpose of the conspiracy, those not participating are not criminally liable." [*Id.,* pp 566-567, quoting *People v Flowers,* 191 Mich App 169, 178; 477 NW2d 473 (1991) (citations omitted).]

See also *People v Aaron,* 409 Mich 672, 731; 299 NW2d 304 (1980).

Here, the prosecution satisfied the first element by proving the killing of a human being, Thomas Gober. A knife wound to Gober's throat severed his carotid artery. The jury could infer that defendant inflicted the fatal wound, given the blood stains on his sleeve and in his pockets. The jury also could have inferred that defendant, if not acting as the principal, had aided and abetted the murder by participating in the underlying offense, i.e., the robbery, and that the killing was within the scope of the robbers' common plan. Warren saw Escobar in the parking structure involved in a struggle. Defendant fled the scene of the crime with Escobar and an unknown third suspect.

Defendant's hood was pulled up as he ran from the parking ramp. He later turned his jacket inside out to avoid detection. These facts establish that defendant was not merely present, but an active participant in the armed robbery. The jury could thus have inferred that defendant, if not acting as a principal, aided and abetted the homicide by participating in the robbery in which the victim was killed.

The second element, malice, is also supported by the evidence. The autopsy established that a knife was used in the homicide. An inference of malice arises from the use of the knife. Moreover, by engaging in an armed robbery with his co-felons, defendant set in motion a force likely to cause death or great bodily harm. Even if defendant did not personally use the knife, the jury could have inferred that defendant acted with malice. Defendant participated in a robbery involving the use of a knife, acting in wanton and wilful disregard of the possibility that death or great bodily harm would result. See *People v Kelly*, 423 Mich 261, 273; 378 NW2d 365 (1985).[5] The use of a knife in an isolated parking structure to rob the victim supported the finding of malice. Even if defendant had not intended to kill the victim when he entered the parking garage, the nature of the killing established that it was neither accidental nor done without malice. Defendant at the very least became aware of his cohort's intent during the events in question. See *id.*, p 280.

Finally, the prosecution presented evidence that defendant committed or assisted in the commission of armed robbery when the victim was killed. The police retrieved the victim's watch from Escobar

---

[5] "The felony is a factor the jury may use to find malice," although malice may not be inferred merely from the intent to commit the underlying felony. *Id.*

shortly after the crime. The jury could have inferred that defendant assisted in the robbery of Gober's watch, given his close association with Escobar, his flight from the scene, and the presence of the victim's blood on his clothes. Accordingly, the prosecution presented sufficient evidence from which a rational trier of fact could find the elements of felony murder beyond a reasonable doubt.

### III. THE FELONY MURDER INSTRUCTIONS

We next address defendant's contention that the trial court erroneously instructed the jury on felony murder. In considering this issue, we note two critical points. First, defendant failed to object to the court's instructions. Second, an error in omitting an element of the felony murder instructions would be an error of constitutional magnitude. See *United States v Gaudin*, 515 US 506, 510; 115 S Ct 2310; 132 L Ed 2d 444 (1995) (the Fifth and Sixth Amendments of the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). Accordingly, our analysis of the alleged instructional error requires that we first address the standard of review for unpreserved claims of constitutional error.

### A. THE PLAIN ERROR DOCTRINE

This state encourages litigants " 'to seek a fair and accurate trial the first time around . . . .' " *Grant, supra,* 445 Mich 551. This Court disfavors consideration of unpreserved claims of error. In *Grant,* this Court discussed the standards for reviewing unpreserved claims of nonconstitutional error. We noted that a rule of automatic reversal would conflict

with MCL 769.26; MSA 28.1096, which provides that judgments or verdicts shall not be reversed absent a miscarriage of justice. *Grant*, p 543. We also observed that Michigan has long recognized the importance of preserving issues for appellate review. *Id.*, pp 546, 550-551.[6] The United States Supreme Court has acknowledged the importance of this policy and the right of the various states to impose preservation requirements. *Id.*, pp 546-547, 551, citing *United States v Young*, 470 US 1, 15; 105 S Ct 1038; 84 L Ed 2d 1 (1985); *Henry v Mississippi*, 379 US 443; 85 S Ct 564; 13 L Ed 2d 408 (1965); *Yakus v United States*, 321 US 414, 444; 64 S Ct 660; 88 L Ed 834 (1944). Trial is "by far the best time to address a defendant's constitutional *and* nonconstitutional rights." *Grant*, *supra*, 445 Mich 551 (emphasis added). "Indeed, the United States Supreme Court has recognized a state's right to develop procedural rules that lead to issue forfeiture[7] even where the procedural rules implicate constitutional protections if the rules serve a legitimate state interest." *Id.*, pp 546-547.

---

[6] We noted in *Grant* that issue preservation and harmless error rules reduce the cost to society that arises from the reversal of convictions:

"The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already taken place; victims may be asked to relive their disturbing experiences. The '[p]assage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible.' Thus, while reversal 'may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution,' and thereby 'cost the society the right to punish admitted offenders.' " [*Id.*, p 551, quoting *United States v Mechanik*, 475 US 66, 72; 106 S Ct 938; 89 L Ed 2d 50 (1986).]

[7] "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

In *Grant*, this Court examined federal authority in adopting an issue forfeiture rule for unpreserved, nonconstitutional error. We relied primarily on the United States Supreme Court's decision in *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993). In *Olano*, the Supreme Court explained the plain error rule of FR Crim P 52(b), which provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The *Olano* Court emphasized that a constitutional right may be forfeited by a party's failure to timely assert that right. *Id.*, p 731. To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. *Id.*, pp 731-734. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id.*, p 734. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.*[8] Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.*, pp 736-737.

In *Grant*, we found *Olano* persuasive in distinguishing between Michigan's issue preservation requirement and harmless error rule. *Grant, supra*, 445 Mich

---

[8] The Court left open the possibility of a special category of errors, yet to be defined, in which prejudice is presumed or that may be corrected regardless of the effect on the outcome. *Id.*, p 735.

552.[9] Accordingly, we applied the factors set forth in
*Olano* to the question of nonconstitutional error
presented in *Grant*. *Id.*, pp 552-554. We found that
plain error occurred, but that it was not decisive of
the outcome. *Id.*

### B. APPLICATION OF THE PLAIN ERROR RULE
### TO UNPRESERVED, CONSTITUTIONAL ERROR

We hold that the plain error rule discussed in *Olano*
and *Grant* extends to unpreserved claims of constitu-
tional error. Although *Grant*'s holding was limited to
nonconstitutional error, our reasoning made it clear
that extending the doctrine to constitutional error fur-
thers the policy underlying the forfeiture rule. In dis-
cussing *Olano*, we noted in *Grant* that "the specific
language of the federal rules themselves, and of the
*Olano* majority's formulation from earlier precedent,
make no distinction between constitutional and non-
constitutional error." *Id.*, p 550. Thus, "it is the forfei-
ture aspect and not the actual constitutional status
that drives the federal standard." *Id.*

We reaffirm *Grant*. The policy underlying the issue
forfeiture rule provides no basis for distinguishing
constitutional from nonconstitutional error. In both
instances, requiring a contemporaneous objection
provides the trial court "an opportunity to correct the
error, which could thereby obviate the necessity of
further legal proceedings and would be by far the
best time to address a defendant's constitutional and

---

[9] In this regard, see also *United States v Thame*, 846 F2d 200, 207 (CA
3, 1988) (applying a mere harmless error analysis rather than the plain
error rule to unpreserved, constitutional error "collapses the plain error
and harmless error doctrines into one and 'threatens to render meaning-
less the contemporaneous-objection requirement in the context of consti-
tutional error' "). Similarly, Michigan's preservation requirement would
have no meaning if we applied the same harmless error rule to both pre-
served and unpreserved constitutional error.

nonconstitutional rights." *Id.*, p 551. Applying the *Olano/Grant* forfeiture rule to unpreserved claims of constitutional error thus serves the important historical and policy reasons underlying the preservation requirement.

In applying the plain error rule to claims of unpreserved, constitutional error, we find instructive *Johnson v United States*, 520 US 461; 117 S Ct 1544; 137 L Ed 2d 718 (1997). In *Johnson*, the trial court had failed to submit the element of materiality to the jury in the petitioner's perjury trial. *Id.*, pp 463-464. The petitioner, however, had not preserved the issue at trial. *Id.*, p 464. The United States Supreme Court, in a virtually unanimous decision,[10] applied the plain error doctrine to the petitioner's claim of instructional error. *Id.*, pp 465-470. The Court concluded that the first two requirements for avoiding forfeiture were met, i.e., plain error occurred. *Id.*, pp 465-468.[11] The Court, however, declined to decide whether the petitioner had satisfied the third requirement, i.e., that the error affected substantial rights. *Id.*, pp 468-469. Nevertheless, the Court questioned the petitioner's claim that the error was so serious as to defy harmless-error analysis, noting that so-called "structural errors" are found in a very limited class of cases. *Id.*[12]

The Supreme Court determined in *Johnson* that, even if the third requirement had been met, it would not correct the error because it did not seriously affect the fairness, integrity, or public reputation of

---

[10] Justice Scalia joined all but two sections of the opinion.

[11] The Court rejected the petitioner's claim that the error was "structural" and fell outside the scope of the plain error rule, noting that "the seriousness of the error claimed does not remove consideration of it from the ambit of the [rule]." *Id.*, p 466.

[12] The Court recently answered the question left open by *Johnson, supra,* in *Neder v United States*, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999), holding that an instructional error involving the omission of an element of an offense is subject to harmless-error analysis.

judicial proceedings. *Id.*, pp 469-470. In reaching this conclusion, the Court ruled that the evidence of materiality was overwhelming and the issue had been uncontroverted at trial and on appeal. *Id.*, p 470. *Johnson* is persuasive in applying the plain error standard of review to constitutional error, including instances where the alleged error is the failure to instruct the jury on an element of the offense.[13]

Because our holding in this case is inconsistent with the plurality opinion in *People v Vaughn*, 447 Mich 217; 524 NW2d 217 (1994), we repudiate the *Vaughn* plurality. In *Vaughn*, the defendant claimed that the trial court had failed adequately to instruct the jury on the essential element of asportation in his kidnapping trial. *Id.*, p 224. The plurality declined to apply the *Grant* plain error rule, stating that it is "well established in our jurisprudence that where an erroneous jury instruction pertains to an essential element of an offense, a contemporaneous objection to the instruction is not required to preserve the issue for appeal." *Id.*, p 228.[14] It therefore concluded that the defendant's failure to object to the instructions did not preclude appellate review. *Id.*, p 229. Applying a harmless error standard, the plurality concluded

---

[13] We also note that several lower federal courts have applied the plain error rule to unpreserved, constitutional error. See, e.g., *United States v Whiting*, 28 F3d 1296 (CA 1, 1994); *United States v Brown*, 307 US App DC 60; 26 F3d 1124 (1994); *United States v Jarvis*, 7 F3d 404 (CA 4, 1993); *Thame*, n 9 *supra*.

[14] The plurality relied in part on several pre-*Grant* decisions of both this Court and the Court of Appeals to support its view of the preservation requirement. See *People v Liggett*, 378 Mich 706, 714; 148 NW2d 784 (1967); *People v Allen*, 109 Mich App 147, 159; 311 NW2d 734 (1981); *People v Ashford*, 91 Mich App 693, 697; 283 NW2d 830 (1979); *People v Price*, 21 Mich App 694, 697-698; 176 NW2d 426 (1970); see also *People v Guillett*, 342 Mich 1, 7; 69 NW2d 140 (1955); *People v MacPherson*, 323 Mich 438, 446-453; 35 NW2d 376 (1949); *People v Yarborough*, 131 Mich App 579, 580; 345 NW2d 650 (1983); *People v Peoples*, 75 Mich App 616, 620; 255 NW2d 707 (1977). Continued adherence to that approach to issue preservation is inappropriate.

that the instructional error was harmless. *Id.*, pp 235-239.

We repudiate the *Vaughn* plurality's conclusion that litigants have no duty to preserve claims of instructional error.[15] The policy underlying Michigan's preservation requirement governs all issues. Moreover, *Vaughn* failed to acknowledge that preservation of instructional error is required both by our court rules and by statute. MCR 2.516(C) states:

> A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict (or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations), stating specifically the matter to which the party objects and the grounds for the objection.

Also, MCL 768.29; MSA 28.1052 provides that "[t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." Although MCR 2.516(C) and MCL 768.29; MSA 28.1052, do not control in this case because the alleged error is a constitutional one, they do provide additional support for extending the *Olano/Grant* forfeiture rule to unpreserved, constitutional error, including claims of instructional error.[16]

---

[15] The plurality opinion is not precedent because a majority did not agree on the ground for the decision. *People v Anderson*, 389 Mich 155, 170; 205 NW2d 461 (1973).

[16] The dissent would follow *Vaughn* and apply a simple harmless error rule because it believes a contemporaneous objection is not required when the erroneous instruction concerns an essential element of the offense. This position is flawed because it ignores the plain language of MCL 768.29; MSA 28.1052 and MCR 2.516(C), which require parties to preserve claims of instructional error. Although the dissent suggests that the Fourteenth Amendment may require that this Court disregard the policy underlying the preservation requirement, *post* at 776, n 2, it fails to explain how our extension of the plain error rule to unpreserved claims of

## C. APPLICATION TO THIS CASE

Having determined that the plain error rule applies to defendant's claim, we next consider whether defendant may avoid forfeiture of the alleged instructional error. Defendant has met the first requirement, i.e., the existence of an error, because the court's felony murder instructions were erroneous.

As noted above, the elements of felony murder are: 1) the killing of a human being, 2) malice, and 3) the commission, attempted commission, or assisting in the commission of one of the felonies enumerated in the statute, among them armed robbery. *Turner, supra,* 213 Mich App 566. To establish guilt under an aiding and abetting theory, the prosecution must proffer evidence that

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*Id.,* p 568.]

The trial court here instructed the jury on all three elements of felony murder. The court instructed that the prosecution must prove that the victim "was killed during an armed robbery by one of the robbers," thus satisfying the first element. The court also clearly instructed the jury regarding malice and

---

constitutional error violates due process. The Supreme Court surely would not have applied the plain error rule in *Johnson* if its application violates due process. Moreover, the dissent's approach would collapse Michigan's preservation requirement into the harmless error rule and would thus fail to further the important policy considerations underlying our preservation jurisprudence. By contrast, our adoption of the federal plain error rule encourages litigants to preserve claims of error at trial.

defendant's participation in the underlying felony, i.e., robbery.

Defendant, however, assigns error to the court's instruction that "[t]he prosecution does not have to prove that Mr. Carines, himself, killed him or participated in the killing. To prove [the first] element the prosecution need prove only that one of the robbers killed Mr. Gober." Defendant argues that the instruction allowed the jury to convict him of felony murder without finding that he participated or assisted in killing the victim. The Court of Appeals accepted defendant's argument. It concluded that the trial court "blended" its felony murder instruction with an aiding and abetting instruction, and in doing so, the court failed to instruct the jury regarding the second element of aiding and abetting, i.e., that defendant must have performed acts or given encouragement that assisted the commission of the crime. Nonetheless, the Court of Appeals determined that the error did not affect the verdict because the jury "apparently" convicted defendant as a principal, given the evidence supporting such a theory.

On the specific facts presented here, the trial court erred by failing to instruct the jury on the second element of aiding and abetting. We wish to emphasize that we have never held that a defendant must participate in the actual killing to be guilty of felony murder. To the contrary, our case law establishes that, in certain circumstances, a defendant may be held responsible for the actions of a co-felon. See, e.g., *Aaron, supra*, 409 Mich 731 (liability may be established on agency principles where the felons are acting intentionally or recklessly in pursuit of a common plan); *Flowers, supra*, 191 Mich App 177 (relying, in part, on *Aaron's* discussion of vicarious liability in rejecting the defendant's argument that "he should not be held

responsible for the independent, unauthorized acts [of a co-felon] of breaking and entering and shooting the decedent"); *Turner, supra,* 213 Mich App 566-573 (relying, in part, on the agency principles discussed in *Aaron* in affirming the defendant's felony murder conviction).

Although felony murder may be submitted to the jury on a vicarious liability theory, the trial court in the case at bar chose to instruct the jury under a traditional aiding and abetting theory. The court properly instructed the jury on the first and third elements of aiding and abetting. The court's instructions made clear that the crime charged must have been committed by defendant or some other person, and that defendant must have had the requisite intent, i.e., malice. The court failed, however, to instruct the jury that, to be guilty under a traditional aiding and abetting theory, defendant must have performed acts or given encouragement that assisted the commission of the crime. Once the court began to instruct on such a theory, it should have provided a complete instruction on the aiding and abetting requirements. Defendant has thus established the existence of an error.[17]

Moreover, the error was plain. Our case law clearly establishes that, to be guilty as an aider and abettor, a defendant must perform acts or give encouragement that assists the commission of the crime. Defendant has thus satisfied the second criterion of the plain error test.

Defendant has failed, however, to meet his burden of persuasion regarding prejudice. The trial court's instructions, when viewed as a whole, adequately pro-

---

[17] Our holding is controlled by the trial court's decision to instruct the jury on a traditional aiding and abetting theory. Our decision should not be interpreted as imposing a general requirement that a defendant must participate in the killing in order to be guilty of felony murder.

tected defendant's rights. Under the instructions given, the jury would not have convicted defendant without concluding that he performed acts or gave encouragement that assisted the commission of the crime.

The court instructed the jury that it could not find defendant guilty unless he deliberately participated in the robbery in which the victim was killed and unless he acted with malice. The court also instructed that

> [i]f the killing was purely accidental and totally unexpected, none of the robbers is guilty of First Degree Murder, or if the killing was an act done by one of the robbers which the others had no reason to anticipate, the other robbers are not guilty of First Degree Felony Murder. They are guilty of an armed robbery, but not murder.

The court then explained once again the different ways to prove malice, and emphasized that "[j]ust because a defendant participated in a robbery during which someone was killed does not itself prove First Degree Felony Murder." The court further instructed that

> [i]f none of the participants intended for anyone to get killed or hurt and there was no good reason to anticipate given how things were planned and/or how they were carried out, that anyone would get killed or hurt, then any death which occurred during the course of the robbery is not a Felony Murder. If given the circumstances of planning and committing the robbery there was no good reason for participants other than the killer to anticipate a killing or a serious injury, those other participants are not guilty of a Felony Murder. If the way a robbery is planned and/or carried out gives the participants good reason to anticipate that someone might be killed or seriously injured, those participants are guilty of First Degree Felony Murder if someone does get hurt and dies from their injuries even though it was not planned that anyone be killed or injured.

These instructions, while imperfect, did not prejudice defendant.[18] The court instructed the jury regarding the element of malice and further made clear that defendant must have participated in the underlying offense. The jury presumably followed the trial court's instructions and found defendant guilty only after concluding that he participated in the robbery *and* acted with malice. Given the evidence in this case, the jury could not have come to those conclusions without also finding that defendant aided or encouraged the killing. The key evidence tying defendant to the robbery, i.e., the blood on his jacket, tied him even more convincingly to the murder.[19] Defendant has therefore failed to show that the court's error affected the outcome at trial. Accordingly, defendant forfeited the claim of error by not timely objecting to the jury instruction. *Grant*, p 553.

Alternatively, even if defendant had satisfied the third requirement for avoiding forfeiture we would decline to reverse in this case because the alleged error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Johnson*, 520 US 469-470. This conclusion is supported by the same reasoning that causes us to conclude that no prejudice occurred. In light of the court's instructions and the evidence presented, the jury could not have reasonably concluded that defendant participated in the robbery and acted with malice without also concluding that he participated in the killing either as the principal or an aider and abettor. Accordingly, the

---

[18] In determining prejudice, we review the entire record, including both the jury instructions and the evidence. Cf. *Neder*, n 12 *supra*.

[19] This evidence is not merely probative of defendant's guilt as a principal, but would also support an inference that he aided and abetted codefendant in killing the victim.

United States Supreme Court's reasoning in *Johnson* applies here:

> On this record there is no basis for concluding that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Indeed, it would be the reversal of a conviction such as this which would have that effect. "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." R. Traynor, The Riddle of Harmless Error 50 (1970). [*Johnson, supra,* 520 US 470.]

### IV. CONCLUSION

In summary, the prosecution presented sufficient evidence to support defendant's armed robbery and felony murder convictions. Regarding the instructional issue, we hold that the *Olano/Grant* forfeiture rule applies to unpreserved claims of constitutional error. Defendant cannot avoid forfeiture because he has not established that he was prejudiced by the court's plain error. Further, even if the three requirements for establishing plain error had been met, we would decline to reverse defendant's conviction because the alleged error did not seriously affect the fairness, integrity or public reputation of judicial proceedings. Accordingly, we affirm the judgment of the Court of Appeals.

WEAVER, C.J., and BRICKLEY, TAYLOR, and YOUNG, JJ., concurred with CORRIGAN, J.

### APPENDIX

Recent decisions establish that the standard for reviewing error on appeal depends upon two factors: first, whether the error is constitutional or nonconstitutional, and second, whether the error is preserved or forfeited. For the convenience of the bench and

bar, we provide the following chart reflecting the current state of the law regarding the governing standards of review.

| Standard of review when error is: | Preserved | Forfeited |
|---|---|---|
| Nonconstitutional | The defendant has the burden of establishing a miscarriage of justice under a "more probable than not" standard. *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999). | The defendant must show a plain error that affected substantial rights. The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Olano, supra; Grant, supra.* |
| Constitutional | If the error is not a structural defect that defies harmless error analysis, the reviewing court must determine whether the beneficiary of the error has established that it is harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392; 521 NW2d 538 (1994). | Same standard as for claims of forfeited, nonconstitutional error. *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). |

KELLY, J. (*concurring in part and dissenting in part*). Although I concur with parts I and II of the majority opinion, I respectfully dissent from parts III and IV. I believe the majority properly concluded that the prosecution presented sufficient evidence to convict defendant of armed robbery and felony murder as either "a principal or an aider and abettor." *Ante* at 758.

However, I dissent from the decision to extend the standard for reviewing unpreserved claims of constitutional error utilized in *People v Grant*[1] to the unpreserved claim of constitutional error presented in this case. Although the majority accurately recognizes that the trial court improperly instructed the jury on aiding and abetting felony murder, it errs by concluding that this error does not warrant reversal. Consequently, I would reverse the Court of Appeals decision and remand for a new trial, because failure to provide relief with regard to this issue will result in manifest injustice.

## STANDARD OF REVIEW

As explained in the Court of Appeals opinion, failure to object to jury instructions constitutes waiver of any error, unless relief is necessary to avoid manifest injustice. MCL 768.29; MSA 28.1052; *People v Vaughn*, 447 Mich 217, 228; 524 NW2d 217 (1994) (opinion of BRICKLEY, J.); *People v Petrella*, 424 Mich 221, 276; 380 NW2d 11 (1985). Manifest injustice results when an erroneous or omitted instruction pertains to a controlling or basic issue of the case. *People v Nawrocki*, 376 Mich 252, 260; 136 NW2d 922 (1965), cert den 382

---

[1] 445 Mich 535; 520 NW2d 123 (1994).

US 455 (1966). Consequently, when an erroneous jury instruction pertains to an essential element of a crime, a contemporaneous objection is unnecessary to preserve the issue for appeal. *Vaughn, supra* at 228-229 (opinion of BRICKLEY, J.);[2] *People v Liggett*, 378 Mich 706, 714; 148 NW2d 784 (1967).

The majority extends the plain error doctrine advanced in *Grant* to unpreserved claims of constitutional error. It requires that a defendant establish the following three elements to avoid forfeiture of an

---

[2] The majority contends my

position is flawed because it ignores the plain language of MCL 768.29; MSA 28.1052 and MCR 2.516(C), which require parties to preserve claims of instructional error. Although the dissent suggests that the Fourteenth Amendment may require that this Court disregard the policy underlying the preservation requirement, . . . it fails to explain how our extension of the plain error rule to unpreserved claims of constitutional error violates due process. The Supreme Court surely would not have applied the plain error rule in *Johnson* [*v United States*, 520 US 461; 117 S Ct 1544; 137 L Ed 2d 718 (1997)] if its application violates due process. Moreover, the dissent's approach would collapse Michigan's preservation requirement into the harmless error rule and would thus fail to further the important policy considerations underlying our preservation jurisprudence. [*Ante* at 767-768, n 16.]

Whereas it asserts that I ignore the "plain language of MCL 768.29; MSA 28.1052 and MCR 2.516(C)," the majority itself concedes that MCR 2.516(C) and MCL 768.29; MSA 28.1052 "do not control in this case because the alleged error is a constitutional one . . . ." *Ante* at 767. Because the instructional error in this case relates to an essential element, it "has long been recognized under Michigan law as unique and commanding an exception to the general rule requiring preservation." *Vaughn, supra* at 229, n 5. By permitting a jury to convict a defendant without finding every essential element, the majority would relieve "the prosecution of its constitutionally mandated burden of proving the essential elements beyond a reasonable doubt." *Id.*, 259-260 (LEVIN, J., dissenting). Contrary to the majority, I believe that we are not free to follow MCL 768.29; MSA 28.1052 and MCR 2.516(C) if they provide less protection of a defendant's due process rights than required under the Fourteenth Amendment. *Id.*, 261, citing *Chapman v California*, 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).

unpreserved claim of constitutional error: (1) an error occurred, (2) the error was plain, and (3) the plain error affected substantial rights. *Ante* at 763. Although the majority recognizes that the *Grant*[3] "holding was limited to nonconstitutional error," it nonetheless concludes "our [*Grant*] reasoning made it clear that extending the [plain error] doctrine to constitutional error furthers the policy underlying the forfeiture rule." *Ante* at 764.

However, in *Grant*, we explicitly recognized that "this preservation rule is not without exceptions." *Id.* at 547. We explained that "appellate courts will consider claims of constitutional error for the first time on appeal when the alleged error could have been decisive of the outcome." *Id.* Contrary to the majority's assertion, *Grant* emphasized "the instant case does not involve a constitutional right." *Id.*[4]

---

[3] The majority fails to acknowledge that *Grant* addressed "a trial court's failure to give a *preliminary* instruction before an offer of testimony on insanity . . . ." *Grant, supra* at 537 (emphasis added). Although this Court did not address final instructions to a jury in *Grant*, it noted that "final instructions to the jury are the subject of harmless-error analysis . . . ." *Id.*, 543.

[4] As recognized by the majority, *Grant* relied primarily on *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993), for its plain error analysis. *Ante* at 763. The majority also recognized that *Olano* premised its plain error analysis on FR Crim P 52(b), which "defines a single category of forfeited-but-reversible error." *Olano, supra* at 732. However, the majority fails to acknowledge that "Michigan does not have a counterpart to FR Crim P 52(b)   . . . ." See *Grant, supra* at 555 (Levin, J., dissenting). As noted by Justice Levin in his *Grant* dissent, the "adoption of the views expressed by the majority in *Olano* concerning the meaning of the federal plain error rule ignores the significant difference between the federal judicial power and the judicial power confided to this Court." *Id.*, 556. While federal rules provide federal courts with limited power to correct errors that were forfeited, the Michigan Constitution provides this Court with plenary power to correct such errors. *Id.*, 556-557.

The case before us involves a constitutional error, an erroneous instruction concerning an essential element of the offense. Therefore, I would conclude that a contemporaneous objection to an erroneous jury instruction is not required to preserve the issue for appeal. *Vaughn, supra* at 228. Defendant's conviction should only "be affirmed if the reviewing court is satisfied that the error is harmless beyond a reasonable doubt." *People v Graves*, 458 Mich 476, 482; 581 NW2d 229 (1998); See *Neder v United States*, 527 US 1; 119 S Ct 1827, 1837; 144 L Ed 2d 35 (1999). Given that "erroneous jury instructions regarding essential elements [are] reviewed for harmless error by utilizing a 'prejudice' standard," this Court must assess whether a properly instructed jury might have reached a different result, had the error not occurred. *Vaughn, supra* at 228, 230, 238 (opinion of Brickley, J.).

FELONY MURDER INSTRUCTIONS

As recognized by the majority, defendant was convicted of felony murder "as either a principal or an aider and abettor." *Ante* at 758. To convict defendant of felony murder, the prosecution was required to establish:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in MCL 750.316;

---

Like *Olano, Johnson*, n 2 *supra* at 466-467, premised its plain error analysis on FR Crim P 52(b). Consequently, the majority's reliance on *Johnson* is similarly misplaced.

MSA 28.548.[5] [*People v Nix*, 453 Mich 619, 640; 556 NW2d
866 (1996) (BOYLE, J., dissenting).]

After the trial court appropriately instructed the
jury on the first element of felony murder,[6] it then
stated:

> The prosecution does not have to prove that [defendant],
> himself, killed [the victim] or participated in the killing. To
> prove this element the prosecution need prove only that
> one of the robbers killed [the victim].

By instructing the jury that the prosecution was
required to prove only that one of the robbers killed
the victim, the trial court blended its felony-murder
instruction with an element of aiding and abetting. As
noted by the majority, the elements supporting a find-
ing of aiding and abetting felony murder are:

> " '(1) [felony murder] was committed by the defendant or
> some other person, (2) the defendant performed acts or
> gave encouragement that assisted the commission of [fel-
> ony murder], and (3) the defendant intended the commis-
> sion of [felony murder] or had knowledge that the principal
> intended its commission at the time he gave aid and
> encouragement.' " [*Ante* at 757, quoting *People v Turner*,
> 213 Mich App 558, 568; 540 NW2d 728 (1995).]

By instructing the jury that the victim had to be
killed by defendant or another person, the trial court
satisfied the first element of aiding and abetting fel-
ony murder. The trial court also satisfied the third
element by instructing the jury that defendant had to

---

[5] The majority accurately notes that "robbery" is one of the enumerated
offenses under MCL 750.316; MSA 28.548.

[6] The court stated, "The first thing which the prosecution must prove is
that the victim . . . was killed during an armed robbery by one of the
robbers."

possess the requisite mens rea to commit felony murder. However, the court failed to properly instruct the jury on the second element of aiding and abetting felony murder by instructing the jury that "the defendant performed acts or gave encouragement that assisted the commission of [felony murder]."[7] *Turner, supra* at 568.[8]

The majority accurately recognizes that the trial court failed to properly instruct the jury that defendant must have "perform[ed] acts or give[n] encouragement that assist[ed] the commission of [felony murder]," the second element of aiding and abetting felony murder. *Ante* at 770. It also notes that, "to be guilty as an aider and abettor, a defendant must perform acts or give encouragement that assists the commission of the crime." The majority concedes that defendant established the existence of an error regarding an essential element of aiding and abetting. However, unfortunately, it concludes that the error did not prejudice him. *Id.*

Without providing any supporting rationale, the majority conclusively states that "the jury would not

---

[7] Therefore, to satisfy the second element of aiding and abetting felony murder, the trial court should have instructed the jury that "defendant performed acts or gave encouragement that assisted the commissions of"

(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of [armed robbery]. [453 Mich 640.]

[8] Although the Court of Appeals appropriately reached this conclusion, it then erroneously concluded that this error did not result in manifest injustice because "the jury apparently found defendant guilty as the principal in the felony murder . . . ." However, this conclusion ignores the fact that the jury found defendant guilty as the "principal *or an aider and abettor.*"

have convicted defendant without concluding that he performed acts or gave encouragement that assisted the commission of the crime." *Ante* at 771. It reasons that, when viewed as a whole, the trial court's instructions adequately protected defendant's rights. *Id.* at 770-771. However, the majority attempts to support this erroneous reasoning by citing the following excerpts from the trial court's instructions:

> "If the killing was purely *accidental and totally unexpected*, none of the robbers is guilty of First Degree Murder, or if the killing was an act done by one of the robbers which the others had no reason to *anticipate*, the other robbers are not guilty of First Degree Felony Murder. They are guilty of an armed robbery, but not murder.

> \*          \*          \*

> "If none of the participants *intended* for anyone to get killed or hurt and there was no good reason to *anticipate* given how things were planned and/or how they were carried out, that anyone would get killed or hurt, then any death which occurred during the course of the robbery is not a Felony Murder. If given the circumstances of planning and committing the robbery there was no good reason for participants other than the killer to *anticipate* a killing or a serious injury, those other participants are not guilty of a Felony Murder. If the way a robbery is planned and/or carried out gives the participants good reason to *anticipate* that someone might be killed or seriously injured, those participants are guilty of First Degree Felony Murder if someone does get hurt and dies from their injuries even though it was not planned that anyone be killed or injured. [*Ante* at 771 (emphasis added).]

The majority acknowledges that these excerpts provided additional instructions, only, regarding the element of malice. *Id.* at 772. However, on the basis of them, it inexplicably concludes that "the jury could

not have come to those conclusions without also find-
ing that defendant aided or encouraged the killing."
*Id.*[9]

The trial court utterly failed to instruct the jury on
the second element of aiding and abetting felony mur-
der, and the remaining instructions provided no gui-
dance regarding this element. Consequently, I would
not conclude that the jury would have found defend-
ant guilty of the second element of aiding and abet-
ting felony murder. Not only did the trial court fail to
instruct on this element, it exacerbated its error by
expressly instructing the jury that

> [t]he prosecution does not have to prove that [defendant],
> himself, killed [the victim] or participated in the killing. To
> prove this element the prosecution need prove only that
> one of the robbers killed [the victim].

I do not conclude that this error was harmless. The
trial court failed to instruct the jury that defendant
must have "performed acts or given encouragement
that assisted" in the killing, and expressly instructed
that defendant need not have participated in the kill-
ing. Consequently, I would conclude that defendant
was prejudiced by the failure to instruct on an essen-
tial element of the crime. Although I believe that

---

[9] The majority alternatively concludes that, had defendant established a
prejudicial error, it would not reverse because "the alleged error did not
seriously affect the fairness, integrity, or public reputation of judicial pro-
ceedings." *Ante* at 772, citing *Johnson v United States,* n 2 *supra* at 469-
470. However, the majority asserts that its "conclusion is supported by the
same reasoning that causes [it] to conclude that no prejudice occurred."
*Id.* Given that the reasoning supporting the majority's prejudice conclu-
sion is flawed, its conclusion that the prejudicial error "did not seriously
affect the fairness, integrity, or public reputation of judicial proceedings"
must fail on the basis of the majority's own admission. In addition, *John-
son* fails to support the majority's conclusion, because the omitted ele-
ment was essentially uncontroverted at trial. *Johnson, supra* at 470.

there was sufficient evidence to convict defendant of felony murder,[10] a properly instructed jury might have found otherwise. See *Vaughn, supra* at 239.

CONCLUSION

The majority properly concluded that the prosecution presented sufficient evidence to convict defendant of armed robbery and felony murder. Although it accurately recognizes that the trial court improperly instructed the jury on aiding and abetting felony murder, it errs by concluding that defendant was not prejudiced by this error. In addition, I reject the majority's unwarranted extension of the standard for reviewing unpreserved claims of constitutional error utilized in *People v Grant* to the unpreserved claim of constitutional error presented here. Therefore, I would reverse the Court of Appeals decision and remand for a new trial.

CAVANAGH, J., concurred with KELLY, J.

---

[10] The majority purports to "review the entire record, including both the jury instructions and the evidence," to determine prejudice. *Ante* at 772, n 18, citing *Neder, supra.* However, in *Neder*, the United States Supreme Court explained that a reviewing court making a harmless-error inquiry does not " 'become in effect a second jury to determine whether the defendant is guilty.' " Rather, a court must ask "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.*, 119 S Ct 1839 (citations omitted). Given that the evidence against defendant was circumstantial, a rational jury properly instructed could have come to a contrary finding regarding the second element of aiding and abetting felony murder. Nevertheless, contrary to *Neder*, the majority acts as a second jury by conclusively stating that the jury would not have convicted defendant without finding this element. *Ante* at 770-772.