# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK DERRON REMUS,

        Defendant-Appellant.

UNPUBLISHED
October 11, 2016

No. 327599
Wayne Circuit Court
LC No. 14-006110-FC

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of second-degree murder, MCL 750.317, two counts of assault with intent to commit murder, MCL 750.83, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, intentional discharge of a firearm at a dwelling or potentially occupied structure, MCL 750.234b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 35 to 60 years' imprisonment for his second-degree murder convictions, 15 to 30 years' imprisonment for his assault with intent to commit murder convictions, one to five years' imprisonment for his felon-in-possession conviction, 1 to 10 years' imprisonment for his intentional discharge of a firearm at a dwelling or potentially occupied structure conviction, and two years' imprisonment for his felony-firearm conviction. We affirm.

During the evening of June 25, 2014, Yalondthe Williams (Yalondthe) invited friends and family members to her home located on West Grand Street in Detroit. After the guests arrived, Yalondthe talked with defendant on the telephone, and defendant asked to come over. Yalondthe had met defendant one month prior, and the two talked on and off. Yalondthe told defendant not to come over until her guests left her home. Despite this instruction, defendant came to the home while people were still over. While outside of the home, defendant attempted to get Yalondthe to speak with him, but was rebuffed. Yalondthe told defendant to leave her home. Two guests at the party, Daylon Randall and Robert Beverly, also told defendant that he should leave.

Yalondthe then proceeded to walk into her home and enter the bathroom. Yalondthe then called defendant and asked him why he was bothering her. In response, defendant stated, "I'm

-1-

from Linwood. I'm about to show you how I get down." Approximately five minutes later, Yalondthe heard gunshots.

Another guest at the party, Tyrone Walker, saw defendant walking down the street toward the home of defendant's relative. As defendant was walking away, Walker overheard defendant stating, "Give me the gun, give me the gun." Approximately 20 minutes later, Walker observed a red vehicle drive up slowly toward Yalondthe's home. The back rear window rolled down and defendant fired one shot into the air. Walker testified that although it was dark outside, he was able to identify defendant because the flash from the gun illuminated defendant's face. The car then drove in front of Yalondthe's house, and defendant fired multiple shots toward the home. Walker ran away after seeing defendant fire the first gunshot, and he was not hit with any bullets. Randall and Beverly were killed during the incident, and a man named Randy Brooks was injured by a bullet.[1]

After hearing the gunshots from inside of her home, Yalondthe rushed outside to see what had occurred. When she walked outside, Yalondthe witnessed Walker cradling Beverly. Walker was hysterical and told Yalondthe that he saw defendant drive by the house and shoot. Walker told the police at the scene that the shooter was "Yalondthe's ex-boyfriend," but he identified defendant by name as the shooter during his second police interview later that day. He explained at trial that he did not want to identify defendant by name at the scene of the incident because members of defendant's family were nearby.

Devin Fernandez, a cousin of Walker and Beverly, received a telephone call from Walker after the incident and rushed to the scene to check on the condition of his family members. After he disrupted the police investigation, he was arrested and taken to the Mound Detention Center. While in a holding cell, Fernandez overheard defendant, who was also in the holding cell, admit to another inmate that he was responsible for the double murder at Linwood and West Grand. Fernandez had never seen defendant before he encountered him in the holding cell.

Defendant first argues that the prosecutor engaged in misconduct during the prosecutor's closing argument. We disagree.

In order to preserve a claim of prosecutorial misconduct, the defendant must contemporaneously object to the alleged misconduct and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the contested remarks made by the prosecutor. Therefore, this issue is not preserved for appeal. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to avoid forfeiture of the issue, (1) error must have occurred (2) the error must have been plain, i.e., clear or obvious and (3) the plain error affected the defendant's substantial rights. *Id*. This third requirement is

---

[1] Defendant was convicted of second-degree murder with regard to Randall and Beverly, and assault with intent to commit murder with regard to Brooks and Walker, in addition to the other convictions listed above.

satisfied if the defendant can demonstrate prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id*. If the defendant satisfies these three requirements, this Court will only grant reversal when the plain error resulted in the conviction of an innocent defendant or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; alteration in original).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 66. "The propriety of a prosecutor's remarks depends on all the facts of the case." *Id*. (quotation marks and citation omitted). In general, " '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation omitted; alteration in original). A prosecutor "is free to argue the evidence and all reasonable inferences arising from it." *Dobek*, 274 Mich App at 66. The prosecutor "is not required to state inferences and conclusions in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). However, a prosecutor cannot argue facts not in evidence. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). "[W]here a curative instruction could have alleviated any prejudicial effect we will not find error requiring reversal." *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

Defendant first argues that the prosecutor committed misconduct when the prosecutor stated during closing argument that Yalondthe and Walker positively identified defendant as the assailant. A review of the prosecutor's closing argument demonstrates that the prosecutor was merely summarizing the testimony of Yalondthe and Walker in order to rebut defense counsel's theory that Yalondthe and Walker had conspired to frame defendant for the shooting. The prosecutor noted that Walker told Yalondthe that defendant was the assailant immediately after the shooting took place while Walker was in a very emotional state. The prosecutor noted that a responding officer confirmed that Walker was hysterical and that Yalondthe told officers of Walker's statement in the immediate aftermath of the shooting. Walker also identified defendant as the shooter in his second interview with police. The prosecutor argued that this undermined the contention that Walker was falsely accusing defendant.

Contrary to defendant's assertion, the prosecutor did not mischaracterize Yalondthe's testimony by stating that she was an eyewitness. The prosecution acknowledged that Yalondthe was not at the scene when the shooting occurred, but instead spoke with Walker in the immediate aftermath. As noted above, the prosecutor may argue the evidence. See *Dobek*, 274 Mich App at 66. Furthermore, the prosecutor noted that Walker changed the way he identified the assailant during the course of his first two interviews with police. The prosecutor stated that while Walker initially only identified the shooter as Yalondthe's ex-boyfriend, he did this out of fear of defendant's family. The prosecutor noted testimony regarding the difficulty of getting witnesses to cooperate, as well as Walker's own testimony that he was intimidated by the presence of defendant's family while he was giving his initial interview to police. When viewed in context, it cannot be said that the prosecutor's statements regarding Yalondthe's and Walker's identifications denied defendant a fair and impartial trial. See *id*. at 63. Furthermore, the trial court instructed the jury that the attorneys' arguments were not evidence. Jurors are presumed to

follow the jury instructions. *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). Therefore, this instruction was sufficient to cure any prejudice. See *Ackerman*, 257 Mich App at 449.

Defendant next argues that the prosecutor committed misconduct when the prosecutor stated during his closing argument that the flash from a fired gun is "extremely bright." The prosecutor argued that this extreme brightness allowed Walker to see who was firing the gun from the vehicle toward Yalondthe's home. Defendant contends that the brightness of a gun flash was not established by expert testimony and, as a result, the prosecutor was arguing facts not in evidence. While defendant is correct that there was no expert witness who testified regarding the brightness that is emitted from a fired gun, the Michigan Supreme Court has held that a prosecutor is permitted to argue all reasonable inferences from the evidence as it relates to his theory of the case. *Bahoda*, 448 Mich at 282.

At trial, Walker testified that defendant fired a gun from the back seat of a vehicle. When asked if the flash from the gun illuminated defendant's face, Walker testified that it did. Walker then testified that he was sure that the flash was bright enough to show defendant's face. Given Walker's testimony that he could clearly see defendant's face even though the incident occurred during the early morning hours, the prosecutor made a reasonable inference that the gun produced a flash that was extremely bright. Furthermore, jurors are permitted to, and should, use their common sense and everyday experience when evaluating the evidence. *People v Simon*, 189 Mich App 565, 567-568; 473 NW2d 785 (1991). That a fired gun creates a bright light involves a matter that the jury could have inferred from their common knowledge and experiences. Even if the prosecutor's statement was improper, the trial court provided an instruction to the jury that the attorneys' statements and arguments are not evidence. Because any prejudicial effect of the prosecutor's remark would be minimal in light of Walker's testimony, this instruction was sufficient to cure any prejudice. See *Ackerman*, 257 Mich App at 449.

Defendant also argues that he was denied his right to the effective assistance of counsel when his trial counsel failed to object to the prosecutor's contested remarks during closing argument. We disagree.

In order to preserve an ineffective assistance of counsel claim for appeal, a defendant must have moved for a new trial or a *Ginther*[2] hearing on that basis in the trial court. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or an evidentiary hearing in the trial court. Therefore, this issue is not preserved for appeal. The ultimate constitutional issue arising from an ineffective assistance of counsel claim is reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Any findings of fact are reviewed for clear error. See *id*. When no *Ginther* hearing is held, review is limited to mistakes apparent on the record. *Payne*, 285 Mich App at 188.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). With regard to the objective standard of reasonableness, the defendant must overcome a strong presumption that defense counsel's conduct stemmed from a sound trial strategy. *Id*. at 52. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

As noted above, the prosecutor's statements regarding the identifications made by Yalondthe and Walker did not constitute prosecutorial misconduct. The prosecutor's statement regarding the brightness created by a fired gun also was not improper. As a result, any objection made by defense counsel would have failed. This Court has explicitly stated that "[c]ounsel is not ineffective for failing to make a futile objection." *Thomas*, 260 Mich App at 457. Therefore, defendant was not denied his right to the effective assistance of counsel.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-5-