# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES PATRICK AUVIL,

Defendant-Appellant.

UNPUBLISHED
May 26, 2016

No. 326216
Wayne Circuit Court
LC No. 14-008690-FH

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of one count of malicious destruction of property between $1,000 and $20,000, MCL 750.377a(1)(b)(1). He was sentenced to three years' probation. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm defendant's convictions and sentence.

## I. BACKGROUND

This appeal arises from an incident which occurred between two neighbors, defendant and Ryan McLeod in Redford Township on December 5, 2013. On that evening the two neighbors had been drinking and near midnight, the two were arguing over a negative remark about a girlfriend and cigarettes when they began to fight. Although the alleged victim's testimony was seemingly in a state of flux as to the particulars as to what was said, or if defendant had a gun, or how the fight actually began, the alleged victim was consistent in stating that the fight culminated in defendant striking McLeod's vehicle with a wrench and kicking out the taillight. According to McLeod, the total damage to the vehicle was approximately $4,200.

After the first day of trial, Juror 11 disclosed that he realized throughout the first day of trial that he may have been involved in a heated incident with defendant in 2006, during which defendant deliberately ran him off the road and the police were called. Juror 11 was not certain that defendant was the person involved in the incident, but agreed that the situation was in the back of his mind and might affect his decision-making. When asked whether he spoke to any other jurors about his possible confrontation with defendant, Juror 11 admitted that he told Juror 12 that defendant might be an individual he had a confrontation with in the past. The court excused Juror 11 from the jury.

-1-

The court then questioned Juror 12. Juror 12 stated that Juror 11 told him that he might have recognized defendant from a prior incident during which defendant ran him off the road. Juror 12 stated that, given the information he received from Juror 11, he "[a]bsolutely" could be fair and impartial and could decide the case based only on the evidence presented in court. Both the prosecutor and defense counsel agreed that trial should not continue with only 11 jurors, however, defense counsel moved for a mistrial, noting that, in this case where defendant was alleged to have damaged a car after losing his temper, Juror 12 had been exposed to information that defendant may have been involved in a road rage incident in the past. The court denied defense counsel's motion for a mistrial on the basis of Juror 12's "affirmative statement that he can base this case only upon the evidence." The court then questioned each juror with respect to whether he or she overheard anything regarding one of the jurors knowing defendant. A few jurors indicated that they had heard that one of the jurors might have known defendant, but indicated that they did not know any details regarding how the juror knew defendant. Defendant was subsequently convicted and sentenced as indicated above.

## II. JUROR BIAS

On appeal, defendant first argues that his due process rights were violated because the trial court failed to excuse a juror after the juror was exposed to extrinsic facts that were likely to prejudice the juror against defendant. This Court reviews de novo a claim of an extraneous influence on the jury. See *People v Budzyn*, 456 Mich 77, 88-100; 566 NW2d 229 (1997); *People v Fletcher*, 260 Mich App 531, 540-541; 679 NW2d 127 (2004).

During deliberations, jurors may only consider evidence presented to them in open court. *Budzyn*, 456 Mich at 88. To establish that an extrinsic influence on a juror requires reversal, a defendant must show (1) that a juror was exposed to an extraneous influence, and (2) that there was a real and substantial possibility that the extraneous influence could have affected the jury's verdict. *Id.* at 89. To demonstrate such a "real and substantial possibility," the defendant should demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict. *Id.* If the defendant establishes this initial burden, the burden then shifts to the prosecutor to show that the error was harmless beyond a reasonable doubt by showing that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming. *Id.* at 89-90.

Review of the record leads us to conclude that Juror 12 was exposed to an extraneous influence when another juror told him that defendant might have run him off the road in the past. Because the offense for which defendant was being tried and the extraneous information both related to defendant acting violently after becoming angry, there appears to be a real and substantial possibility that the extraneous information could have affected the verdict. *Budzyn*, 456 Mich at 89. The trial court erred in not making such a finding. However, such a finding does not end our inquiry of the issue. Next, we must determine whether the evidence against defendant was overwhelming. We therefore turn to the record to determine whether the evidence of defendant's guilt was overwhelming such that it rendered the trial court's error harmless beyond a reasonable doubt. *Budzyn*, 456 Mich at 89-90.

The record reveals that Ryan McLeod presented clear testimony that, during an argument, defendant damaged the windshield and roof of McLeod's car with wrenches and kicked out the taillight. While McLeod was the only eyewitness to the incident, there was evidence that Officer Ditzhazy observed wrenches in the driveway and damage to the vehicle when he arrived on the scene, that defendant returned home after the incident "yelling and screaming," and that defendant bought a new taillight for the car and offered to pay for the damages after the incident. Given this overwhelming evidence as to whether defendant violated MCL 750.377a(1)(b)(1), we conclude that any error caused by Juror 12's exposure to an extraneous influence was harmless beyond a reasonable doubt.

## III.  ADJOURNMENT

Defendant next argues that the trial court erred in denying his motion to adjourn trial because Officer Daniel Bailey, the officer in charge of the case, was unavailable due to emergency surgery. This Court reviews a trial court's decision to grant or deny an adjournment for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).

MCR 2.503(C)(2) provides that "[a]n adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." Similarly, this Court has stated that an adjournment will be granted on the ground of unavailability of a witness only for good cause shown and if diligent efforts have been made to produce the witness. *People v Coy*, 258 Mich App 1, 18-19; 669 NW2d 831 (2003); MCL 768.2. To determine whether a defendant had good cause for an adjournment, a court should consider whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. *Coy*, 258 Mich App at 18. "Even with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id.* at 18-19.

We conclude that defendant is not entitled to reversal on the basis of the trial court's denial of an adjournment due to Officer Bailey's unavailability where, even assuming the trial court erred in denying the adjournment,[1] defendant has not shown prejudice from the denial.

---

[1] To the extent the trial court ruled that Bailey's testimony was impeachment for a collateral matter, the trial court appears to have erred. A fact is not collateral if it "consists of any part of the witness's account of the background and circumstances of a material transaction which as a matter of human experience he would not have been mistaken about if his story were true." *People v Guy*, 121 Mich App 592, 604; 329 NW2d 435 (1982). Even though defendant was not charged with felonious assault, testimony regarding whether defendant hit McLeod with a wrench during the incident provides "the background and circumstances" of the damage to the car, which "as a matter of human experience he would not have been mistaken about if his story were true." *Id.* Therefore, whether defendant hit McLeod with a wrench during the incident

-3-

Before defendant requested the adjournment, defense counsel thoroughly cross-examined McLeod with respect to whether defendant hit him with a wrench. Further testimony regarding that issue would have been merely cumulative. Furthermore, given defense counsel's impeachment of McLeod on other issues, defendant was not prejudiced by his inability to further impeach McLeod's credibility with respect to whether he spoke to Officer Bailey about the amount of damage to the car. Because defendant has not shown prejudice from the denial of the adjournment, we conclude that he is not entitled to reversal on the basis of this issue. *Id.*

## IV. JUDICIAL BIAS

Defendant next argues that he is entitled to a new trial because the trial court pierced the veil of judicial impartiality by making a negative comment about the defense in front of the jury. The question whether judicial misconduct denied a defendant a fair trial is a question of constitutional law that this Court reviews de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Because defense counsel did not object to the trial court's comment, however, this issue was not preserved for review. Therefore, the issue is reviewed for plain error that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

During defense counsel's cross-examination of McLeod regarding whether defendant hit him with a wrench during the incident, the following exchange occurred:

*WITNESS*: I don't remember him touching me with the wrench, that is correct.

*DEFENSE COUNSEL*: But now you're saying that he may have touched you in the arm with the wrench?

*WITNESS*: I didn't say that, sir. I said he had a wrench in his hand.

*DEFENSE COUNSEL*: Okay. So your testimony today is he never touched you with a wrench in any way?

*WITNESS*: No.

*DEFENSE COUNSEL*: That's not your testimony?

*WITNESS*: Can you repeat the question, sir.

*PROSECUTOR*: Objection. Argumentative. He said—

*COURT*: Well, I think he's confusing the jury.

*DEFENSE COUNSEL*: I'm trying to clarify, your Honor. If I could clarify.

---

does not appear to be a collateral matter. Hence, for purposes of this appeal we presume error and still find that defendant is not entitled to relief as he cannot show prejudice.

*COURT*: I think your question asks for a negative response. I didn't understand the answer.

*DEFENSE COUNSEL*: Okay.

In *Stevens*, 498 Mich 162, our Supreme Court clarified the standard for evaluating whether a trial court's conduct before a jury deprives a defendant of a fair and impartial trial. A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. *Id.* at 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.* at 171. When evaluating the totality of the circumstances, a court should consider (1) the nature of the trial judge's conduct, (2) the tone and demeanor of the judge, (3) the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, (4) the extent to which the judge's conduct was directed at one side more than the other, and (5) the presence of any curative instructions. *Id.* at 172-178.

Having reviewed these factors, we are not persuaded that the trial court's comment denied defendant a fair and impartial trial. The comment was brief and isolated and did not appear to belittle defense counsel or unfairly influence the jury. The trial court did not state that defense counsel was deliberately confusing the jury, but merely indicated that defense counsel's questioning was confusing to the jury. Furthermore, the record did not reveal a pattern of negativity against the defense. Under these circumstances, defendant has not shown plain error that affected his substantial rights. *Carines*, 460 Mich at 763.

## V. PROSECUTORIAL ERROR

Defendant next argues that he was denied a fair trial because the prosecutor belittled defense counsel by stating in front of the jury that defense counsel's questioning was "disrespectful." Because defendant failed to object to the prosecutor's comment, this issue is reviewed for plain error that affected defendant's substantial rights. *Carines*, 460 Mich at 763.

The prosecutor's comment occurred during the following cross-examination of McLeod by defense counsel with respect to whether defendant had any reason for damaging McLeod's car:

*DEFENSE COUNSEL*: Isn't it true that there really was no reason for my client to do this?

*PROSECUTOR*: Objection. How can he ask that. And motive is not even—the People don't have to prove motive, so how is that relevant? And how is this witness supposed to get in the mind of his client?

*COURT*: Sustained.

*DEFENSE COUNSEL*: Well, could I ask him if there was no objective reason?

*COURT*:  No.

*DEFENSE COUNSEL*:  I'm not asking to get in my client's mind.

*COURT*:  This is argument.  You can't ask that question, it's not relevant.  It's speculative, and you can't get in the mind of the defendant.

*DEFENSE COUNSEL*:  Okay.

*DEFENSE COUNSEL*:  So you have no idea why my client did this to you?

*PROSECUTOR*:  Is that not the same question.

*COURT*:  It is the same question.

*PROSECUTOR*:  It's disrespectful.

*DEFENSE COUNSEL*:  Your Honor, it's not disrespectful.  This is a court of law, I'm trying to argue legally.

*COURT*:  Okay, I'm going to have you approach.

The prosecutor's comment that defense counsel's question was "disrespectful" does not appear to have denied defendant a fair trial.  The comment was brief and isolated.  Furthermore, the jury heard defense counsel's response that his question was not disrespectful, and that he was merely attempting to "argue legally."  Defendant has not shown plain error that affected his substantial rights.  *Carines*, 460 Mich at 763.

Affirmed.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens