# Order

Michigan Supreme Court
Lansing, Michigan

March 9, 2018

155184

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

SC: 155184
COA: 328246
Wayne CC: 15-000181-FC

RYAN LASHAWN CHATMAN,
      Defendant-Appellee.

_____/

      On January 11, 2018, the Court heard oral argument on the application for leave to appeal the December 6, 2016 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

      MARKMAN, C.J. (*dissenting*).

      I respectfully dissent from this Court's order denying leave to appeal. I instead would reverse the Court of Appeals' judgment because I believe that the Court of Appeals erred by holding that the trial judge's questioning of three witnesses exhibited bias against defendant, denying defendant a fair trial.

      "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. "In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the

extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." *Id*. at 172. As this Court has explained:

> Identifying the nature of the conduct provides the starting point to evaluate whether the conduct overstepped the line of judicial impartiality. For instance, when evaluating a judge's questioning of witnesses, a reviewing court must first bear in mind that such interrogation is generally appropriate under MRE 614(b).[1] This Court has stated that the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information. [*Id*. at 173 (citations omitted).]

In this case, it is undisputed that defendant shot the victim. The only issue at trial was whether defendant shot the victim in self-defense or by accident. The victim testified that defendant was playing with his gun, and the victim asked him to put his gun away. The victim also testified that he did not have a weapon and they were 10 feet apart when defendant shot him. Defendant, on the other hand, testified that he was not playing with his gun. Instead, defendant stated that the victim had asked him for money and, when he refused, the victim, who was highly intoxicated, became angry, shoved defendant, and threw a chair at him. Defendant testified that he pulled out his gun when the victim charged him with the chair and that he accidentally pulled the trigger during a subsequent struggle for the gun.

The Court of Appeals held that the trial court's questions worked to highlight the prosecutor's theory of the case. For example, the court asked the victim whether he had a weapon, even though the victim had already testified that he was weaponless, and the court inquired of the victim how far apart he and the defendant had been when they were arguing, even though the victim had already testified that they were about 10 feet apart.[2] The trial court also asked Reverend Lumsie Fisher, who was in the house during the incident, whether he saw the victim with a weapon, which, according to the Court of Appeals, only "reinforced [the victim's] status as an unarmed victim."[3] *People v Chatman*, unpublished per curiam opinion of the Court of Appeals, issued December 6, 2016 (Docket No. 328246), p 5. Finally, the trial court questioned Detective Nicole Bock, the fingerprint analyst who matched defendant's fingerprints to those on the gun. Bock testified that the matched fingerprint card indicated the name of Ryan Reynolds.

---

[1] MRE 614(b) provides: "The court may interrogate witnesses, whether called by itself or by a party."

[2] As the Court of Appeals acknowledged, "[t]he tone of the judge with this witness could not be gauged from the transcript." *Chatman*, unpub op at 7.

[3] As the Court of Appeals recognized, the judge's questioning of Fisher was "brief." *Id*.

The trial court asked Bock whether the fingerprints also matched defendant's (Ryan Chatman's) fingerprints or whether the name of "Ryan Reynolds" was synonymous with that of Ryan Chatman. Bock did not directly answer the court's questions but instead stated that it was not her job to make that determination. A different officer later testified that Ryan Reynolds and Ryan Chatman were indeed the same person.

I do not believe that the trial court's questions of the witnesses demonstrated any bias. The fact that some of the questions were repetitive of the prosecutor's questions hardly demonstrates a bias. There is nothing inappropriate about a judge repeating questions to ensure that he or she understands the facts of a case correctly. The issue in this case was whether the shooting was the result of self-defense or an accident, and therefore it was critical to ensure that the judge and the jury understood who exactly possessed a weapon and who did not. Furthermore, there was nothing inappropriate about asking Fisher whether the victim was armed. Even though the victim had already testified that he was not armed, it was helpful to confirm that collaborating testimony had been presented on this issue.

I also do not believe that all of the trial court's questions were pro-prosecutor in any coherent way. For example, the trial court asked the victim why the victim did not just leave when he saw that defendant was playing with a gun. He also asked the victim how the argument had escalated so quickly and whether he had said anything to defendant to provoke him. Finally, the trial court asked the victim, immediately after the victim indicated that the gun was a "nine millimeter," whether he had ever fired a handgun. In my judgment, it appears that the trial court asked this question not to suggest that the victim must not have been the aggressor, but rather to question how the victim would have known that the gun was a "nine millimeter" if he had not had any prior experiences with handguns.

I also believe that the trial court was genuinely confused about Bock's testimony[4] and was simply attempting to clarify the testimony given that Bock seemed to be testifying that a different person's fingerprints were found on the gun, even though all previous testimony had indicated that the gun was indisputably defendant's gun and that defendant was the only person seen with a gun.[5] See *Stevens*, 498 Mich at 175-176 ("Judicial questioning might be more necessary when a judge is confronted with a difficult witness who refuses to answer questions posed by attorneys or repeatedly responds to those questions with unclear answers . . . ."). The Court of Appeals held that

---

[4] At one point, the trial judge specifically acknowledged, "I don't understand."

[5] "Indeed, the judge's questioning of prosecution witness Michigan State Police Lieutenant Bock . . . might actually have been helpful to the defendant, as the witness was unable to testify that the 'state ID number' on the fingerprint identification card matched that of the defendant in this case." *Chatman*, unpub op at 2 (GADOLA, J., dissenting in part).

"[t]he tone of this trial judge in questioning this witness appears argumentative." *Chatman*, unpub op at 9. To the extent that this is true, I believe that is so simply because the trial court was justifiably confused by Bock's testimony.

In addition, the judge's questioning of the three witnesses did not consume a significant part of the three-day trial.[6] The judge did not interrupt direct or cross-examination, but held his questions until after the parties had finished and then allowed further examination by the parties if they desired. Finally, the trial court instructed the jury that the judge's comments and questions were not evidence and that they were not meant to influence their votes or express a personal opinion. "Because it is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Stevens*, 498 Mich at 177 (quotation marks, citation, and brackets omitted).

The instant case is distinguishable from *Stevens*, in which we held that the trial judge's questioning of witnesses "pierce[d] the veil of judicial impartiality," depriving defendant of the right to a fair trial. *Id*. at 170. To begin with, unlike in *Stevens*, defendant did not object to any of the trial court's questions. In addition, in *Stevens*, the trial judge questioned defendant's expert's qualifications, even though the judge had already endorsed him as an expert; several times asked questions that undermined the expert's credibility; and questioned the defendant in a manner that suggested disbelief of the defendant. None of that (or anything remotely similar) occurred in this case. For these reasons, I do not believe that the judge's questioning pierced the veil of judicial impartiality warranting reversal of defendant's convictions and a new trial.

---

[6] As the Court of Appeals dissent explained:

> A review of the record reveals that the trial court asked a total of three questions in the course of a 3-day trial concerning the ultimate issue in dispute in this case, which concerned whether a physical struggle between the defendant and the victim led to the victim's shooting. The court asked the victim: (1) "Did you ever grab anything . . . ?"; (2) "Do you remember ever grabbing a chair or anything?"; and (3) "Did you lay any hands on [defendant] at all?" These questions, while arguably unnecessary given the prosecution's direct examination of the witness, were not hostile, as they were directed to the victim, and merely produced cumulative testimony concerning the events leading up to the shooting. [*Chatman*, unpub op at 2 (GADOLA, J., dissenting in part).]

Even assuming that there was error here (and I discern none), the error was hardly plain, i.e., clear or obvious.[7] Moreover, the alleged error could not reasonably be said to have affected the outcome of the lower court proceeding. It was undisputed that defendant had a gun, that the victim did not have a gun, and that defendant shot the victim. The only issue at trial was whether defendant acted in self-defense or accidentally. Therefore, the trial court's questioning of the victim and Fisher about who possessed a gun and its questioning of the detective concerning defendant's fingerprints on the gun could not possibly have affected the outcome of the proceeding. Finally, defendant does not even *argue* that he was actually innocent and, for the reasons explained above, the error did not in any way affect the fairness, integrity or public reputation of any judicial proceedings. Therefore, in my judgment, defendant is not entitled to relief and accordingly I would reverse the Court of Appeals' judgment.

---

[7] This issue is unpreserved, so defendant has the burden of satisfying the plain-error requirements of *People v Carines*, 460 Mich 750 (1999).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 9, 2018



Clerk

s0306