*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ZARSKE, Minors.

UNPUBLISHED
November 4, 2021

No. 356620
Alpena Circuit Court
Family Division
LC No. 17-007323-NA

Before: MARKEY, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to his two minor children, RZ and TZ, pursuant to MCL 712A.19b(3)(h) (parent is imprisoned for such a period that the child would be deprived of a normal home for more than two years). On appeal, respondent argues that the trial court assumed jurisdiction without a proper factual basis, that the court erred by finding a statutory ground for termination established by clear and convincing evidence, and that termination was not in the best interests of the children. We disagree.

## I. FACTUAL BACKGROUND

In November 2017, petitioner, the Department of Health and Human Services (DHHS), filed a petition seeking the removal of the children from the care of respondent and his wife because they produced and consumed methamphetamine in the home while the children were asleep. Respondent entered a no-contest plea on the basis of portions of the police report that were contained in the removal petition. Counsel for DHHS stated that the report would be provided to the court after the hearing. However, apparently this police report was never provided to the trial court and entered into the record. Initially, respondent participated in services, including therapy, substance abuse treatment, and overnight parenting time. He was eventually sentenced to 4 to 20 years' imprisonment on the basis of charges stemming from the methamphetamine use and production. He continued to participate in the services available to him in prison. During respondent's incarceration, the children's mother voluntarily released her parental rights to the children. In December 2020, DHHS filed a supplemental petition seeking the termination of respondent's parental rights due to the length of time the children had been in care, and

-1-

respondent's inability to participate in services and therefore eliminate the barriers that brought the children into care.

At the termination hearing, caseworker Heather Burkhardt-Watson testified in regard to her attempts to place the children with relatives. The children's paternal grandmother initially declined placement because she was already caring for a family member with special needs and she was unable to devote the necessary attention to the children. The children's grandmother eventually decided that she wanted to maintain a grandmotherly role and that the children were receiving the best care from their foster parents. Watson also spoke to the children's paternal aunt, who initially did not believe that she could properly accommodate the children with her work schedule, but she later felt that the children were in the best possible placement with the foster parents.

Watson explained that RZ and TZ were placed with the foster family in December 2017, and had remained there since. She testified that the children were "doing very well" and that they viewed the placement as their home. Watson testified that RZ was nearly five years old and that TZ was three years old. She stated that the paternal grandmother maintained a strong relationship with the children while they were in their placement. She testified that the foster parents had to lead the conversation when respondent would call because the children were not interested in talking with him. Watson testified that respondent had been incarcerated since March 2019, and that his earliest release date was February 2023. As a result, the children would be seven and five years old, respectively, at the time of his release. She opined that once respondent was released from prison, he would have to maintain sobriety, housing, and employment, in addition to reconnecting with the children, which could possibly take another two or three years. The children had "a very close bond" with their foster parents, they viewed their foster father as their father, and "they get along great" with the older children who were in the home. According to Watson, it "would be tremendously traumatizing to" the children to be removed from the foster home and placed with respondent when he was released from prison and that it would not be "fair to them to not have a permanent home, and to wonder for the next two years as they get older, as their [sic] able to understand more, the fact that they may have to leave the only home they've ever known." She also expressed concern in regard to respondent's criminal history, and whether the children would have to be removed again due to future drug use or other criminality.

Respondent affirmed that his earliest release date from prison was February 2023. He believed that he had the tools that he needed to be successful upon his release. He testified that he had employment with a construction company lined up and that he planned to live with his parents. The children were familiar with their grandparents' home and would be comfortable there. Respondent determined that the foster parents were "good people," that he would want the children to continue to have a relationship with them, and that he would want to gradually regain custody of them. In terms of relative placement, respondent explained that he spoke to his mother and she agreed to take the children if it would help him keep his parental rights. His mother did not testify at the termination hearing.

At the conclusion of the hearing, the trial court entered an order terminating respondent's parental rights. He now appeals.

## II. DISCUSSION

## A. NO-CONTEST PLEA

Respondent argues that the trial court erred by accepting a no-contest plea without establishing a proper factual basis. We disagree.

Respondent "did not move to withdraw [his plea] in the trial court or otherwise object to the" factual basis supporting the plea. *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020). "Therefore, this issue is unpreserved." *Id*. The plain error standard applies "to unpreserved claims of error arising out of child-protective proceedings." *Id*. at 463. A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only . . . when an error seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. at 763-764 (quotation marks and citation omitted). "A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *In re Pederson*, 331 Mich App at 463 (quotation marks and citation omitted).

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional. The adjudicative phase determines whether the probate court may exercise jurisdiction over the child. If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). "The fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court is called a trial." *In re Pederson*, 331 Mich App at 464 (quotation marks and citation omitted). "A parent may also waive his or her right to a trial and admit the allegations in a petition or plead no contest to them." *Id*. See also MCR 3.971(A). MCR 3.971(D)(2) provides in relevant part:

> The court shall not accept a plea of admission or of no contest without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true, preferably by questioning the respondent unless the offer is to plead no contest. If the plea is no contest, the court shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true.

In the present case, respondent, in light of his pending criminal case, entered a plea of no contest to the allegations in the petition. For the factual basis supporting this plea, the court relied "upon the portions of the police report that are set forth in the petition." However, the petition did not contain any references to a police report, the court stated that it did not have the police report, and there is nothing in the record that suggests that the court was ever presented with a police report. However, respondent expressly stipulated to the use of the police report to establish the factual basis, and he did not raise an objection to the court's decision to accept the plea after stating that it did not have the police report. "A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal." *Grant v AAA Mich/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006). Because respondent expressly agreed with the trial court's actions, he cannot now use the procedure as the basis of his appeal.

In any event, even if the trial court erred by accepting respondent's no-contest plea without presentation of the police report, there was sufficient evidence for the court to find that at least one of the statutory grounds alleged in the petition was true. See MCR 3.971(D)(2). The petition for jurisdiction was filed pursuant to MCL 712A.2(b)(1) and (2). Those provisions provide, in pertinent part, that

> [The] parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

> *  *  *

> [The] home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

The petition alleged that an undercover narcotics team informed Child Protective Services (CPS) that methamphetamine and components used in the manufacture of methamphetamine were discovered in respondent's home. As a result of this discovery, respondent was arrested and incarcerated for possession and production of methamphetamine. The petition also stated that respondent admitted that he used methamphetamine in the bathroom while the children were sleeping in the home. At the preliminary hearing, a CPS caseworker testified in regard to the allegations in the petition, explaining that he received a complaint that methamphetamine was discovered in the home in which respondent and the children lived. The caseworker further testified that respondent informed him that respondent used methamphetamine in the bathroom while the children were sleeping. Respondent was eventually sentenced and imprisoned for possession and manufacture of methamphetamine. As a result, respondent has failed to establish that any error that occurred by the trial court accepting the plea without receiving the police report affected the outcome of the proceedings. See *In re Pederson*, 331 Mich App at 463.

## B. STATUTORY GROUNDS

Respondent next asserts that petitioner failed to establish a statutory ground for termination by clear and convincing evidence. We disagree.

We review for clear error a trial court's finding "that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (quotation marks and citations omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted; alteration removed).

To terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the enumerated statutory grounds has been established. MCL 712A.19b(3).

Respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(h), which requires proof that:

> The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010). An incarcerated parent "can achieve proper care and custody through placement of the child with a relative." *In re Baham*, 331 Mich App 737, 754; 954 NW2d 529 (2020) (quotation marks, citation, and alteration omitted).

Respondent argues that "the testimony at the termination trial showed that he had in place a relative caregiver that would be available but for his inability to direct who would have the care of his children." The only relatives who were discussed as potential family placements were respondent's mother and sister, and the testimony supported the trial court's finding that they were not appropriate placements for the children. The caseworker testified that the grandmother initially denied placement because she was occupied caring for a disabled family member and that she later requested that the children remain with the foster family because they were doing well there. The caseworker testified that the aunt told her that she would not be able to accommodate the children. Neither relative ever testified, neither of them ever requested placement, and respondent never attempted to direct placement of the children with either one of them.

Respondent asserts that the trial court erred by finding that he would not be able to provide for the children within a reasonable time considering their respective ages. His *earliest* release date was February 2023, and both of the children were younger than five years old at the time of termination. The children had already spent more than three years, the majority of their lives, in foster care, and if respondent's rights were not terminated it would have been *at least* two more years before they could live in their permanent home. The caseworker testified that the children needed permanency and that it would be traumatic for them to have to spend two more years without knowing how that would be achieved. As a result, the trial court's findings were not clearly erroneous and supported termination pursuant to MCL 712A.19b(3)(h).

## C. BEST INTERESTS

Finally, respondent argues that petitioner failed to prove that termination was in the best interests of the children. We disagree.

We review a trial court's finding that termination is in the child's best interests for clear error. *In re Olive/Metts*, 297 Mich App at 40. If the trial court finds that a statutory ground for termination of parental rights has been established, it must order termination of parental rights only if it finds that doing so is in the best interests of the child. MCL 712A.19b(5); *In re Olive/Metts*, 297 Mich App at 40. In making this finding, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability,

and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

The testimony presented at trial supported the court's finding that termination was in the best interests of RZ and TZ. The children had a strong bond with their foster parents and did not have a strong bond with respondent. The caseworker testified that the children had "a very close bond" with their foster parents, that they considered their foster parents to be their mother and father, and that they viewed their placement as home. The caseworker and the foster mother testified that the foster mother had to facilitate the phone calls the children had with respondent because the children generally were not engaged with the calls. The trial court justifiably placed tremendous emphasis on the children's need for permanence, stability, and finality. See *id*. The children had spent most of their lives in their foster placement, and the caseworker testified that it would have been traumatic to remove the children from their foster home. The children had been in foster care for approximately three years, and the children would have been left in limbo for at least two more years while respondent finished his prison sentence and then established himself outside of incarceration. Finally, the evidence suggested that the foster parents, who planned to adopt RZ and TZ, intended to continue to facilitate the relationship between the children and respondent and his family.

Affirmed.

/s/ Jane E. Markey
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

-6-