*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STACY LYNN SORENSEN,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2022

No. 353362
Muskegon Circuit Court
LC No. 19-003811-FH

Before: CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of tampering with evidence, MCL 750.483a(6)(b), and failure to report suspected child abuse or neglect, MCL 722.633(2). The trial court sentenced defendant to 12 months' incarceration for the tampering with evidence conviction and to 1 day of incarceration for the failure to report conviction.[1] On appeal, defendant challenges only her tampering with evidence conviction. In her initial brief defendant argued that there was insufficient evidence of guilt. After review of the briefing, we ordered the parties to file supplemental briefs[2] on the question whether the prosecution had proven the *corpus delicti*, i.e., whether there was proof—by a preponderance of the evidence—of a crime having been committed, other than the defendant's confession. For the reasons stated in this opinion, we conclude that the prosecution did not satisfy this requirement and so vacate the tampering with evidence conviction.

## I. BACKGROUND

Defendant and her husband, Mark Sorensen, have an adopted son together and were also foster-care parents. On March 30, 2019, defendant placed a Wyze-brand, motion-sensitive camera

---

[1] The record indicates that defendant has completed her 12-month sentence, which commenced on January 7, 2020.

[2] *People v Sorensen*, unpublished order of the Court of Appeals, issued December 17, 2021 (Docket No. 353362).

in her bedroom. According to defendant, she installed the camera because she suspected that one of the foster children was stealing items from the bedroom. The Wyze camera pairs with an application on a person's cellular phone. Through the application, the user may remotely view a live feed from the camera. The camera takes 12-second video clips anytime it detects motion, and it sends the user these "alert videos" through the application.

On April 12, 2019, defendant drove to the Norton Shores Police Department and gave a statement to Detective Todd Swanker that she had observed Mark sexually assault their adopted son. Swanker testified that defendant told him she had viewed her husband assault the child on April 1 through live-feed footage from the Wyze camera, and again on April 11 through recorded alert videos. Defendant testified at trial that she was unsure what she saw when she viewed the camera feed on April 1 and that her husband denied the crime when she confronted him about it.[3] But the jury convicted her for failing to immediately report the crime, and she does not appeal that conviction.

When she came to the police station, defendant voluntarily gave the police her phone so that they could run a data extraction on it. At that point, there was no reason for the police to believe that defendant had deleted any evidence of the assaults. The extraction analysis recovered 12 alert videos of the April 11 assault and a screenshot of the April 1 assault that had been saved to the phone.

On April 16, 2019, defendant participated in a two-hour long police interview with Swanker and Detective Ryan Pieske. The interview was recorded and played for the jury at trial. During that interview, defendant initially maintained that she did not recall seeing any alert videos from the April 1 incident and that she had only viewed that incident on the live feed. At some point Pieske misrepresented to defendant that, based on his review of the data extraction, he knew that April 1 alert videos had been deleted. After repeated questioning regarding those videos, defendant stated that she had used her phone to delete "three or four videos" depicting the April 1 assault.

At trial, Pieske admitted that he had lied to defendant when he said that the data showed videos of the April 1 incident had been deleted. Indeed, he testified that when he examined defendant's phone on April 12 using a software program known as Cellebrite that can extract data from a cell phone, he did not find a download of an April 1 video nor any metadata record showing that one had been downloaded and later deleted.[4]

Pieske also testified about his efforts to determine if defendant had deleted any cloud data. As the officer explained in his testimony, Wyze maintains cloud-based service records and keeps alert videos for 14 days after which they are automatically deleted. Once an alert video is recorded

---

[3] She also explained her belief that she needed more proof before reporting her husband to the police.

[4] The officer was asked whether he had "any reason to believe that [defendant] went in and modified her meta data to delete her deleted information," and responded, "No. I don't have any information to indicate that."

onto the Wyze-cloud, there are three things that can happen regarding its storage. The user can affirmatively download the video to their phone, delete the recording from the Wyze-cloud or do neither. If the user does not affirmatively download or save the video it remains on the Wyze-cloud for 14 days after which Wyze automatically deletes it. During the 14-day window, the user can access the alert videos through the application.

Pieske attempted to access the Wyze-cloud using the Cellebrite program but his ability to do so was very limited due to the incompatibility of the two programs and as a result he could not obtain any relevant information. He then obtained a subpoena directed to Wyze seeking this information but, because the demand was after the 14-day retention period, Wyze advised that any video from April 1 would had been automatically deleted from the cloud and in the officer's words, they "didn't have any data."[5]

In sum, the sole evidence that defendant deleted evidence was defendant's confession.

After the prosecution rested its case-in-chief, defendant moved for a directed verdict, arguing that the prosecution had presented insufficient evidence to support conviction on either count. Defendant argued that there was no evidence that she deleted anything and that her confession had been the result of police false statements and pressure and should not be given credence. The trial court denied defendant's motion, primarily because there was evidence of a confession which, if the jury accepted, was sufficient to convict.

Defendant then testified in her defense and denied deleting any videos of the April 1 assault. She testified that throughout her interview with the police she repeatedly denied deleting any videos. She said she was distraught at the interview and wanted to "give them as much information as I could possibly give them." She explained that her inexperience with the camera, the police asking her repeatedly if she had deleted anything, and their repeated insistence (later shown to be false) that they had proof she had done so "was making me doubt myself and doubt what I did" and eventually led to her confession.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred by denying the motion for a directed verdict.[6] She argues, in part, that there was insufficient evidence presented for a rational trier of

---

[5] We note that Pieske was not qualified as an expert and purported to be giving lay testimony, though he gave detailed explanations of how the Wyze camera and application worked following his purchase of the same device and running tests to determine its operation.

[6] "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). Reasonable inferences drawn from circumstantial evidence may constitute proof of the essential elements of a crime sufficient to overcome a motion for directed verdict. *People v Peña*, 224 Mich App 650, 659; 569 NW2d 871 (1997). But

fact to conclude that a video of the April 1 assault was deleted. In arguing that there was sufficient evidence presented on that matter, the prosecutor relies primarily on defendant's confession that she deleted three of four videos taken on April 1. The prosecutor's reliance on defendant's confession to show that the alleged crime, i.e., an unlawful deletion of evidence, actually occurred, implicates the *corpus delicti* rule. Accordingly, we ordered the parties to submit supplemental briefing on that issue.

"In a criminal prosecution, proof of the *corpus delicti* of a crime is required before the prosecution may introduce a defendant's inculpatory statements." *People v Schumacher*, 276 Mich App 165, 180; 740 NW2d 534 (2007). To prove the *corpus delicti*, i.e., the "body of the crime," *Black's Law Dictionary* (7th ed), the prosecution must present "direct or circumstantial evidence independent of the defendant's confession that the specific injury or loss occurred and that some criminal agency was the source or cause of the injury." *People v Ish*, 252 Mich App 115, 117; 652 NW2d 257 (2002). The prosecution must make this showing by a preponderance of the evidence. See *People v Modelski*, 164 Mich App 337, 342; 416 NW2d 708 (1987). The purpose of the *corpus delicti* rule is to prevent a conviction that is based on a confession to a crime that did not occur. *Ish*, 252 Mich App at 117.

As applied here, the *corpus delicti* rule requires proof independent of defendant's confession that a video of the April 1 assault was deleted by some method other than the automatic 14-day-deletion system. See MCL 750.483a(5)(a) (providing that a person shall not "[k]nowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding.").

The prosecution first argues that the absence of April 1 alert videos on defendant's phone supports the conclusion that they were deleted. This argument rests on an erroneous inference, however, and misunderstands the proofs at trial. Again, Pieske testified that an alert video is stored to the cloud for 14 days and during that time the user can access the video through the Wyze application. A user has three options regarding alert videos: she can (1) save the video to the phone; (2) delete the video; or (3) neither save nor delete the video, in which case the video will automatically be deleted from cloud storage after 14 days. Because a user is not required to save the alert videos to the phone, the absence of April 1 alert videos on defendant's phone does not suggest that they were deleted. One could only reach that inference if there was evidence that the videos were saved to the phone from the cloud, and there was none in this case. Thus, an equally consistent explanation for the lack of April 1 alert videos on the phone is that they were never saved there in the first place and that they remained on cloud storage for 14 days before being automatically deleted by Wyze.

In its supplemental brief, the prosecution also argues that the screenshot of the April 1 assault recovered from defendant's phone shows by a preponderance of the evidence that a video of a sexual assault existed on April 1, 2019. We agree that the data extraction evidence shows that defendant took a screenshot of the April 1 assault a few hours after that event took place. We also agree that a reasonable inference from this evidence is that defendant took the screenshot when

"circumstantial proof must facilitate reasonable inferences . . . , not mere speculation." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020).

-4-

viewing a video of the assault. As discussed, however, defendant did not have to save the video to her phone to view it; she could have watched it from the cloud storage. Indeed, Pieske testified that the screen shot had a file name ending "Wyze.jpg," which indicates that defendant took the screen shot from the application rather than a downloaded video.

Ultimately, then, this case turns on whether there is evidence that defendant affirmatively deleted videos of the April 1 assault from cloud storage. However, the prosecution has been unable to point us to any testimony from Pieske establishing that he checked defendant's cloud data within the 14-day window and determined that the videos in question did not exist. Again, Pieske testified that he subpoenaed Wyze for cloud data for defendant's account *after* the 14-day window and the company informed him that they do not keep a record of when alert videos are created or deleted by the user.

In sum, Pieske testified that as of the April 16, 2019 interview with defendant, he did not have proof that she had deleted alert videos of the April 1 assault. And his testimony at trial does not show by a preponderance of the evidence that videos of the April 1 assault were deleted by some method besides the automatic 14-day-deletion system. Accordingly, we conclude that the *corpus delicti* rule was not satisfied in this case and that the admission of defendant's confession was plain error.[7] Defendant was prejudiced by this error because, for the reasons discussed, absent her confession there was insufficient evidence to show that she intentionally destroyed or tampered with evidence. Therefore, she was entitled to a directed verdict as to that charge.[8]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[7] Unpreserved issues are reviewed for error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Plain error occurs if three requirements are met: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citations omitted).

[8] Given our conclusion, we decline to address defendant's other arguments as to why the trial court erred by denying the motion for a directed verdict. It is also unnecessary for us to address the second issue raised by defendant, which is whether the trial court abused its discretion by admitting a digitally altered photograph of the April 1 screen shot that was zoomed in and much larger than what defendant saw on her phone.