*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 17, 2022

Plaintiff-Appellee,

v

No. 346529
Mason Circuit Court
LC No. 15-002928-FC

BENJAMIN MICHAEL BENTZ,

Defendant-Appellant.

## ON REMAND

Before: MURRAY, C.J., and SERVITTO and RONAYNE-KRAUSE, JJ.

PER CURIAM.

This matter returns to this Court on remand with directions to consider "defendant's argument that the testimony of Dr. N. Debra Simms that the complainant suffered 'probable pediatric sexual abuse' requires reversal of the defendant's convictions under the plain-error analysis of *People v Carines*, 460 Mich 750, 763-764 (1999), and [the Supreme] Court's decision in *People v Harbison*, 540 Mich 230 (2019)." *People v Bentz*, 957 NW2d 335 (Mich, 2021). This issue was not raised by defendant in the previous appeal.[1] We reverse and remand for a new trial.

## I. FACTS

This matter has a lengthy procedural history and has twice before been before this Court. Defendant was convicted of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age). He was sentenced to serve four consecutive terms of 25 to 75 years' imprisonment for each CSC-I conviction, and a

---

[1] The Supreme Court's remand order notes that "the Court of Appeals was correct that this issue was not before it, [but] given that our remand to the trial court was limited to the defendant's ineffective assistance claims, we believe it prudent for the Court of Appeals to consider this issue in the first instance." *Bentz*, 957 NW2d at 335.

consecutive term of 7 to 15 years' imprisonment for the CSC-II conviction. *People v Bentz*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2016 (Docket No. 329016), vacated and remanded 501 Mich 1057 (2018). This Court's first opinion regarding this case explains the general background:

> Defendant's convictions arose from incidents that occurred between June 2012 and October 2013 involving the eight- and nine-year-old victim. At trial, the victim testified to four incidents wherein defendant put his penis in her anus and to one incident wherein defendant put his finger in her vagina. According to the victim, defendant threatened her to ensure that she kept the incidents a secret. Approximately a year after the final incident, the victim disclosed the incidents to her mother.

> Doctor Debra Simms, a physician at Devos Children's Hospital, testified as to her physical examination of the victim. She reported that her diagnosis was "probable pediatric sexual abuse" because, although the victim's physical examination was normal, the victim reported a "clear, consistent, detailed, [and] descriptive" history of sexual abuse to her medical assistants. On cross-examination, defense counsel elicited testimony from Dr. Simms acknowledging that it was possible, based on the victim's physical examination, that the victim was not abused. Similarly, Dr. Simms also testified, in response to defense counsel, that it was possible for children to lie about allegations of sexual abuse. [*Id*. at 1.]

In Docket No. 329016, defendant first argued that defense counsel was ineffective for failing to object to Dr. Simms's testimony. *Id*. This Court agreed that it was error for Dr. Simms to testify as to her "diagnosis" of probable pediatric sexual abuse, as it was not based on any medical findings, but rather, on the victim's emotional state and the history the victim provided. Dr. Simms's "diagnosis" thus amounted to improper vouching for the victim's credibility. *Id*. at 2-3. But this Court concluded that defendant had not overcome the presumption that counsel's failure to object amounted to sound trial strategy, as defense counsel used Dr. Simms's testimony to emphasize the lack of physical evidence. *Id*. at 3. Thus, this Court concluded that counsel was not ineffective. *Id*. This Court then rejected a second claim of ineffective assistance, explaining that counsel could not be deemed ineffective for having failed to object to the admission of statements made by the victim to Dr. Simms's medical assistants because those statements were admissible under MRE 803(4). *Id*. at 3-4. This Court then wrote:

> Additionally, defendant cannot demonstrate a reasonable probability that, had defense counsel successfully objected to Dr. Simms's testimony, the outcome of the proceedings would have been different. . . . The victim's statements to Dr. Simms were consistent with the victim's testimony at trial, which was subject to cross-examination by defense counsel. The victim's testimony itself established that defendant engaged in sexual penetration and sexual contact with a person under 13 years old, as required by MCL 750.520b(1)(a) and MCL 750.520[]c[](1)(a). MCL 750.520h. The victim's testimony was consistent and detailed, and no directly contradicting testimony or evidence was introduced at trial. Dr. Simms's additional repetition of the victim's statements is merely cumulative and is unlikely to have altered the outcome of the proceeding. . . . Additionally, the jury was

-2-

instructed at trial to "think carefully about the reasons and facts [Dr. Simms] gave for her opinion," bringing further attention to the fact that Dr. Simms's diagnosis was based on the victim's statements alone. Therefore, defendant has failed to prove that, had defense counsel objected to Dr. Simms's testimony, there is a reasonable probability the outcome of the trial would have been different. [*Bentz*, unpub op at 4 (Docket No. 329016).]

This Court then rejected a third claim of ineffective assistance: that counsel should have impeached the victim with certain inconsistent statements. *Id*. at 4-5. This Court noted that counsel did call the victim's credibility into doubt with other inconsistent statements and through the testimony of other witnesses. Counsel's "failure to cross-examine the victim regarding every inconsistency in her story does not amount to performance denying defendant of the Sixth Amendment right to counsel." *Id*. at 5.

In a concurring opinion, Judge Borrello disagreed with the majority's conclusion that the failure to object to Dr. Simms's testimony was sound trial strategy. *Id*. at 1 (BORRELLO, P.J., concurring). Judge Borrello explained that Dr. Simms provided improper testimony by stating her "diagnosis" of probable pediatric sexual abuse, that the error was unpreserved, and that the error was thus reviewed for plain error. *Id*. at 1-2. Judge Borrello wrote:

Consequently, the failure of trial counsel to object to this statement constituted ineffective assistance of counsel. . . . However, [i]n spite of the improper veracity vouching I would conclude that reversal is not required for two reasons. First, the doctor's statements, while improper were *somewhat* minimized. Secondly, my review of the record leads me to conclude that the jury had sufficient untainted evidence offered by the victim in this matter such that I cannot find that the erroneous evidence offered by Simms constituted plain error. As this Court has stated on numerous occasions, the victim's testimony alone is sufficient to convict defendant for these crimes. MCL 750.520h. [*Bentz*, unpub op at 2 (BORRELLO, J., concurring).]

Defendant sought leave to appeal in the Supreme Court. The application again focused almost entirely on the issue of counsel's ineffectiveness, but included the single sentence arguing that, in the alternative, the error warranted reversal under the plain-error analysis. In an order entered on November 1, 2017, the Supreme Court ordered arguments on the application. The Court asked the parties to file supplemental briefs "addressing the defendant's claims of ineffective assistance of counsel, including whether defense counsel's failure to object to the testimony of Dr. N. Debra Simms fell below an objective standard of reasonableness, and whether there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Bentz*, 501 Mich 915 (2017). After arguments, the Supreme Court vacated this Court's decision and remanded the matter to the trial court with directions that the trial court hold "an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436 (1973), for a determination of whether the defendant was denied the effective assistance of trial counsel." *People v Bentz*, 501 Mich 1057 (2018).

The trial court denied defendant's motion for a new trial after the evidentiary hearing, leading to defendant's second appeal. This Court issued an unpublished opinion on May 7, 2020,

which affirmed defendant's convictions and sentences. *People v Bentz*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2020 (Docket No. 346529), remanded 957 NW2d 335 (Mich, 2021). That opinion explains:

> At the *Ginther* hearing, defendant's trial attorney testified that he thought Dr. Simms's testimony bolstered the victim's credibility and that he considered objecting to it. Defense counsel chose not to object because he did not believe that the jury was paying attention to Dr. Simms's testimony and he did not want to draw attention to it by objecting. Furthermore, defense counsel wanted to flesh out Dr. Simms's testimony on cross-examination to destroy her credibility, and "the more things she was saying that were incredible, the more things [he] could get out of her" on cross-examination.

> Additionally, defense counsel testified that he only wanted to point out major inconsistencies in the victim's prior statements and trial testimony because he believed that the jury would give the victim leeway regarding minor inconsistencies such as when the abuse occurred. Defense counsel also testified that "[y]ou don't want to necessarily destroy [a child witness in a sexual conduct case] the way you may a law enforcement witness, who's used to it." Defense counsel agreed that he was worried about the possible negative impact that it could have on his client if the victim became emotional while testifying. [*Id*. at 2.]

This Court addressed whether counsel was ineffective for failing to object to Dr. Simms's "diagnosis" testimony. *Id*. at 5. This Court agreed that the admission of the testimony was "an obvious error . . . ." *id*, but explained that under the ineffective-assistance analysis, "defense counsel may choose not to object to impermissible testimony for reasonable strategic reasons without rendering deficient performance." *Id*. This Court explained that counsel's explanation at the *Ginther* hearing showed that he did consider objecting, but chose not to for strategic reasons. *Id*. "This decision constituted sound trial strategy under the circumstances despite the obviously erroneous nature of the testimony." *Id*. In a footnote, this Court wrote:

> Defendant's only claim on appeal is that defense counsel was ineffective; he makes no argument that the trial court erred. Therefore, this issue is only properly evaluated under the standard for ineffective assistance of counsel claims, not the plain-error standard used to address unpreserved claims of trial court error. See [*People v*] *Randolph*, 502 Mich [1, 11-12, 16; 917 NW2d 249 (2018)] (holding that an appellate court must not conflate the ineffective-assistance and plain-error standards because "the claims associated with each type of error have their own elements and require different analyses"). [*Bentz*, unpub op at 5 n 2 (Docket No. 346529).]

This Court then rejected defendant's claim that counsel was ineffective for failing to impeach the victim with certain inconsistent statements regarding when, precisely, the abuse took place. *Id*. at 6-7. Having rejected all of defendant's claims of error, this Court affirmed. *Id*.

Defendant again sought leave in the Supreme Court. On April 21, 2021, the Supreme Court entered an order remanding the case to this Court to consider "in the first instance" the question

whether the admission of Dr. Simms's "diagnosis" of probable pediatric sexual abuse warrants reversal under the plain-error test. *Bentz*, 957 NW2d at 335. Both parties have filed supplemental briefs.

## II. ANALYSIS

The question on remand is whether Dr. Simms's testimony of a "diagnosis" of "probable pediatric sexual abuse" amounts to plain error warranting reversal. The plain-error test requires a defendant to first establish three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. If a defendant satisfies all three of these requirements, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, brackets, and citation omitted). The first two elements of this test are not disputed; all (including this Court) have agreed that the admission of Dr. Simms's "diagnosis" was plain error. The question is whether the third and fourth prongs are satisfied.

In *Harbison*, Dr. Simms was also called to testify regarding her examination of the victim in that case, TH. *Harbison*, 504 Mich at 243-244. And just like the present case, Dr. Simms "diagnosed" TH with "probable pediatric sexual abuse." *Id*. at 244. Like the present case, this "diagnosis" was based solely on the history provided by the victim; there were no physical indications of any abuse. *Id*. at 244-247. Dr. Simms also explained to Mr. Harbison's jury that her "diagnosis" was based on certain objective criteria formulated under a national standard. A diagnosis of "definite" sexual abuse would require pregnancy, a sexually transmitted disease, a video, or an eyewitness to the abuse. *Id*. at 247-248. The finding of "probable" sexual abuse is warranted where there is "clear, consistent, detailed and descriptive history . . . ." *Id*. at 248.

Although Mr. Harbison did not object at trial, the Supreme Court concluded that he was nonetheless entitled to a new trial. *Id*. at 260-261. First, it was obviously erroneous for Dr. Simms to provide an opinion of "probable pediatric sexual abuse" based solely on the history provided by TH, and without any medical findings. *Id*. at 260-262. Dr. Simms's testimony was no more than an opinion that TH was credible, and that opinion was not admissible because "a jury is in just as good a position to evaluate the victim's testimony as the doctor." *Id*. at 262 (quotation marks, brackets, and citation omitted). The error was also plain under a number of appellate decisions. *Id*.

Regarding the third and fourth prongs of the analysis, the Court explained that such an opinion is unreliable "given the lack of physical findings and the superfluous nature of an expert's testimony in cases in which the jury was in just as good a position to evaluate the victim's testimony." *Id*. at 263 (quotation marks, ellipses, and quotation omitted). But "the most prejudicial aspect of Dr. Simms's testimony was that she clearly vouched for TH's credibility." *Id*. Such testimony is particularly troubling in CSC matters:

The use of expert testimony in the prosecution of criminal sexual conduct cases is not an ordinary situation. Given the nature of the offense and the terrible consequences of a miscalculation—the consequences when an individual, on many occasions a family member, is falsely accused of one of society's most heinous offenses, or, conversely, when one who commits such a crime would go unpunished and a possible reoccurrence of the act would go unprevented—appropriate safeguards are necessary. To a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat. [*Id.* at 263-264 (quotation omitted).]

Regarding the fourth prong of the analysis, the Court explained:

We also conclude that this error is far more pernicious than a mere evidentiary error. Rather, this error strikes at the heart of several important principles underlying our rules of evidence. Dr. Simms's testimony that TH suffered "probable pediatric sexual abuse" based solely on TH's statements about her history not only had the effect of vouching for TH's credibility, but it also invaded the province of the jury to determine the only issue in the case. Then, Dr. Simms reinforced this plain error by claiming that her diagnosis was based on a "national [consensus]" of pediatricians when even a cursory review of the article on which she relies reveals that the authors did not intend for pediatricians to rely on the article to make a diagnosis of "probable pediatric sexual abuse" at trial. This improperly admitted testimony very likely bolstered TH's credibility and affected the verdict. We conclude that the gravity of this significant error seriously affected the integrity of Harbison's trial. [*Id.* at 264-266 (footnote omitted).]

The present matter is very similar to *Harbison*. The only witness to directly testify about the events was the victim. After the victim testified, the prosecutor called Dr. Simms. After testifying to her background, Dr. Simms turn to her examination of the victim. Dr. Simms's examination of the victim found no physical or other measurable signs of sexual abuse. But—and just like in *Harbison*—Dr. Simms explained that she reached the "diagnosis [of] probable pediatric sexual abuse[]" based solely on "her history, between the caregiver's history, the history to the authorities during her forensic interview, and then her history with us at our medical evaluation, she had been clear, consistent, detailed, descriptive." In other words, Dr. Simms impressed upon the jury that, in her expert opinion, the victim was credible.

This testimony was then relied upon by the prosecutor in closing arguments, when the prosecutor explained:

And as Dr. Simms stated, even though the medical examination a year after the fact showed no scarring, bruising, cuts, that that was really not a surprise. We heal after a month – or, excuse me, after – You know, within a year, we are certainly healed. Children are certainly healed. *And that her clear, consistent, and coherent report of sexual abuse at the hands of her father made this a case of probable child sexual abuse.* That the fact that there was no physical evidence does not rule out that it didn't happen. It doesn't tell you that it didn't happen.

Thus, the jury was presented with testimony outlining Dr. Simms's qualifications, testimony making it appear that Dr. Simms's opinion was reliable and based on certain objective criteria, the opinion itself, and then a closing argument in which the prosecutor reinforced Dr. Simms's opinion of the victim's credibility to persuade the jury to convict. All of this was improper, and quite easily could have tipped the scales unfairly in the prosecutor's favor.

And, the jury instruction given regarding Dr. Simms's testimony may have further emphasized to the jury that Dr. Simms's "diagnosis" should be given weight:

> You have heard testimony from a witness, Dr. Debra Simms, who has given you her opinion as an expert in the field of general pediatric medicine and child abuse/neglect. Experts are allowed to give opinions in court about matters they are experts on.
>
> However, you do not have to believe an expert's opinion. Instead, you should decide whether you believe it and how important you think it is. When you decide whether you believe an expert's opinion, think carefully about the reasons and facts she gave for her opinion, and whether those facts are true. You should also think about the expert's qualifications, and whether her opinion makes sense when you think about the other evidence in the case.

Dr. Simms's "diagnosis," i.e., her expert opinion, was nothing more than an assessment of the victim's credibility. The trial court's instruction, however, further emphasized that Dr. Simms was an expert in the field of child abuse, and that she was allowed to provide an opinion on matters within her expertise. Given the nature of Dr. Simms's "expert opinion" in this case, the instruction implied that Dr. Simms was an expert in deciding whether a child's reports of sexual abuse were credible. The instruction further directed the jury to weigh Dr. Simms's qualifications, which were drawn out at length by the prosecutor. That would have emphasized that Dr. Simms was a highly qualified individual to make a credibility assessment.

The prosecutor first argues that the admission of Dr. Simms's testimony ultimately did not affect the outcome of the trial because the victim was credible. The prosecutor relies on the fact that, in addressing the question of trial counsel's ineffectiveness, the trial court stated that even if counsel's performance was deficient, the error was not prejudicial under the ineffective-assistance framework because the victim was a credible witness.[2] However, we are not faced with the

---

[2] In arguing that this Court should defer to the trial court's determination regarding the victim's credibility, the prosecutor notes that, in *Harbison*, the trial court held an evidentiary hearing and granted defendant a new trial in part because counsel failed to present evidence that the victim's brother had not witnessed any abuse, which was directly contrary to the victim's testimony. *Harbison*, 504 Mich at 249-250. The prosecutor contends that the present case should be viewed differently than *Harbison* because the trial court there granted relief, whereas here, the trial court did not. However, the discussion of the victim's brother's testimony in *Harbison* was in relation to a claim of *ineffective assistance*, and the brother's testimony came at a post-conviction evidentiary hearing. *Id*. As the prosecutor notes, in analyzing the third and fourth prongs of the

question regarding whether trial counsel was effective; the question is whether a plain error warrants reversal. When evaluating a trial court's mistake for plain error, this Court "need not look beyond the trial court record," and can evaluate the error "without any entanglement in contested or unknown facts . . . . That is the nature of plain-error review." *Randolph*, 502 Mich at 1 (quotation marks and citation omitted).

Contrary to the prosecution's argument, this case was a credibility contest. The only disputed question before the jury was whether to believe the victim's testimony. That testimony was not supported by any physical evidence, any eyewitness testimony, or anything else corroborating it—other than Dr. Simms's testimony which was improperly used to bolster the victim's credibility. Defendant's entire defense was to cast doubt on the victim's credibility. This was a pure credibility contest, just as it was in *Harbison*.[3]

Our dissenting colleague attempts to distinguish this case from *Harbison* in part on the basis that Dr. Simms did not testify about national standards, whereas that testimony was present in *Harbison*. True enough, but as the dissent recognizes, that testimony was simply icing on the prejudice cake, as the *Harbison* Court itself recognized by indicating that the testimony "reinforced" what was already decided, i.e., that Dr. Simms's improper testimony in a credibility contest was prejudicial enough to warrant a new trial. *Thorpe*, 504 Mich at 264. Just as importantly, the Court had earlier concluded that "the most prejudicial aspect of Dr. Simms's testimony was that she clearly vouched for TH's credibility," *id*., at 263, and that is what precisely occurred here.

We recognize that when this matter was first before this Court, a majority opined that the ineffective-assistance claim failed, both because counsel's actions were not deficient, and because defendant could not show a reasonable likelihood of a different result. The majority reasoned that defendant was not prejudiced because the victim was available to be cross-examined, her testimony was consistent and detailed, no directly contradicting testimony was produced at trial,

---

plain-error test, the Supreme Court made no mention of the brother's testimony or the trial court's resolution of the ineffective-assistance claim; in fact, in its analysis, the Court made no mention of the victim's credibility whatsoever, save for a statement that Dr. Simms's testimony "very likely bolstered TH's credibility and affected the verdict." *Id*. at 263-265.

[3] The prosecutor argues this was not a credibility contest because the victim's testimony showed a degree of sexual knowledge that would not be expected for her age. That argument, however, is an argument explaining why the victim should be deemed credible. In any event, it is true that age-inappropriate sexual knowledge can be indicative of sexual abuse. See *People v Peterson*, 450 Mich 349, 382 n 2; 537 NW2d 857 (1995) (Cavanagh, J., dissenting). The victim was 11 years old when she testified, and she did nothing more than describe the alleged sexual acts, using the terms "penis," "anus," and "vagina." That she used the correct terms to describe body parts did not show any unusual or unexpected sexual knowledge. See *People v Duenaz*, 306 Mich App 85, 93; 854 NW2d 531 (2014)("The victim was 12 years old when she testified in this case about what occurred when she was almost 8 years old. It is pure speculation to suggest . . . that the victim's knowledge of sexual matters was inappropriate . . . "). And certainly, that did not take the matter beyond the realm of a pure credibility contest.

and the jury was instructed to think carefully about the reasons and facts underlying Dr. Simms's opinion testimony. *Bentz*, unpub op at 4. And, while he disagreed with the majority's reasoning, Judge Borrello opined that the prejudicial impact of Dr. Simms's testimony was somewhat minimized by the trial court's instruction, and that the untainted evidence "offered by the victim in this matter [was] such that I cannot find that the erroneous evidence offered by Simms constituted plain error." *Bentz*, unpub op at 2 (BORRELLO, P.J., concurring).

Here, however, it is apparent that the prosecution's case was based virtually entirely on the victim's testimony, which was then bolstered by two experts, including Dr. Simms. Defendant presented a number of witnesses who challenged the victim's account. As in *Harbison*, the victim's testimony was not corroborated to any significant degree; further, the jury was presented with several witnesses casting doubt on her testimony. Under those circumstances, Dr. Simms's improper opinion testimony could have tipped the scales in the prosecutor's favor.

Reversed and remanded for a new trial. We do not retain jurisdiction.


/s/ Christopher M. Murray
/s/ Deborah A. Servitto